## Estate of Weaver.

*November 10—December 7, 1926.*

*Wills: Testamentary capacity: Undue influence: Unnatural disposition of property by aged man: Evidence: Sufficiency: Right to dispose of property by will.*

1. A seventy-four-year-old man who transacted such business as collecting rents and investing the royalties from a mine in bank certificates of deposit, and who knew the condition of his property and his relation to persons to whom he might leave it, is *held* to possess sufficient mental capacity to make a will. p. 432.

2. Where an aged and infirm person makes disposition of his property under circumstances that arouse suspicion and in such way as to inflict injustice upon his heirs, one profiting by such disposition has the burden of showing that it was untainted with undue influence or fraud. p. 433.

3. When one charging fraud or undue influence in making a will has established a *prima facie* case, his opponent must take up the burden of meeting the case made. p. 434.

4. Every person has a right to dispose of his property by will as he desires; and where a person had testamentary capacity and was not subject to undue influence, the duty of the court is to give effect to his will, no matter how inequitable or unjust it may be. p. 437.

5. The evidence in a proceeding to probate a codicil to a will is *held* to show that the codicil, which practically disinherited a son who had cared for his father, mother, and an invalid brother till their deaths without compensation, was the result of undue influence exercised by another son who had acted as a confidential adviser to the father and who profited by the codicil. p. 437.

APPEAL from an order of the county court of Lafayette county: J. B. SIMPSON, Judge. *Reversed.*

*Louis Weaver* contested the probate of a codicil to the will of his father. From an order admitting the codicil to probate *Louis Weaver* appeals.

The testator, by a will made in 1922, gave 120 acres of land to his son *Robert* and forty acres of land to contestant

and forty acres to his daughter, Mrs. Laird. The will divided his personal property equally among the three living children of testator.

In 1925, two months prior to his death, a codicil to the will was executed by the testator which gave the 120-acre farm to *Robert* and all of the eighty acres of land to Mrs. Laird and awarded all the personal property to *Robert* and Mrs. Laird. The codicil recited:

"I have heretofore given to my son *Lewis Weaver* considerable personal property, and for that reason give the said eighty acres, including the forty acres heretofore given to my son *Lewis,* to my daughter Mary Jane Laird, to in some measure balance up my property between my three living children."

The only provision for the son *Louis,* the contestant, made by the codicil was a bequest of $100.

For the appellant there was a brief by *Harold J. Marcoe* of Darlington, attorney, and *Kopp & Brunckhorst* of Platteville, of counsel, and oral argument by *Mr. A. W. Kopp* and *Mr. Marcoe.*

For the respondent there was a brief by *John J. Boyle,* guardian *ad litem,* and *C. F. McDaniel,* attorney, both of Darlington, and oral argument by *Mr. McDaniel.*

STEVENS, J. Two questions are presented on this appeal: (1) Did the testator possess sufficient mental capacity to make a will? (2) Was the will procured by undue influence?

(1) Testator was seventy-four years of age when the codicil was executed. He had transacted such simple business affairs as the collection of rent and the cashing of checks received from royalties from a mine and the investing of the same in bank certificates of deposit. While he did not possess a strong mentality, he undoubtedly possessed sufficient mental capacity to comprehend the condition of his

property, his relations to the persons who were or who might have been the objects of his bounty, and the scope and bearing of the provisions of his will.

(2) The question whether the execution of the codicil was procured by undue influence presents a more difficult problem. Testator had lived in the family of his son *Louis* and been cared for by *Louis* and his family during all the latter years of his life. *Louis* had cared for the aged wife of the testator during her declining years to the date of her death. This son, who was practically disinherited, had also cared for the invalid son of the testator until the time of his death. Testator had paid *Louis* nothing for this care. The father, on the other hand, had always collected rent for the home farm from *Louis*. There is no proof that there was ever any unpleasantness between the testator and his son *Louis* or the members of his family who so faithfully cared for the father until the date of his death. On the contrary, the proof shows that their relations were cordial. The testator played with the children of his son *Louis* and was apparently fond of them. The codicil gave these children a bequest of only $100 each.

The fact that the testator gave only $100 to this son who had faithfully cared for testator and for his wife and for his invalid son without compensation sharply challenges the attention and calls for an explanation. The court has searched the entire record for an explanation of this unnatural conduct in practically disinheriting this son to whom he was so deeply indebted and finds no explanation unless it be that the codicil was procured by undue influence.

The rule established by the leading case of *Davis v. Dean,* 66 Wis. 100, 110, 26 N. W. 737, has been repeatedly approved and applied in will cases. It is there held that, where an aged and infirm person makes disposition of his property under circumstances that arouse suspicion and in such a way as to inflict injustice upon the heirs of such aged per-

son, the law casts upon the one who profits by such disposition of property the burden of showing that such disposition was untainted with undue influence or other fraud, and that the will was the intelligent and deliberate act of the testator. "This rule is to protect the weak and unsuspicious from the cunning and fraud of those who stand in confidential relations to them, and has its foundation in good morals and sound public policy." *Davis v. Dean,* 66 Wis. 100, 110, 26 N. W. 737.

The line of cases in this court which approves the rule of *Davis v. Dean, supra,* holds that when one charging fraud or undue influence has established a *prima facie* case, which would entitle him to relief if the proof stopped at that point, his opponent must take up the burden of meeting the case made by his adversary. When the proof has established a *prima facie* case, the presumption against wrong doing still stands, but it is eclipsed for the time being by the adversary presumption which will prevail and determine the case unless the one charged with wrong doing produces evidence so satisfactorily explaining the facts that establish a *prima facie* case that it can be said that the case of the one charging fraud or undue influence is not established by clear and satisfactory evidence. *Ball v. Boston,* 153 Wis. 27, 37, 141 N. W. 8.

The son *Robert* was the confidential adviser of his father in all his business affairs. Testator's confidence in and reliance upon his son *Robert* is shown by the fact that he made him the sole executor of his will and codicil, with a direction that he should not be required to give bond. Because of his position as confidential adviser of his father, *Robert* was in a position to exercise an undue influence. The father, while possessed of sufficient mental capacity to make a will, if uninfluenced by others, was shown by the proof to be a man who at the time the codicil was made could be influenced to do things by the suggestion of others, not strangers.

Estate of Weaver, 191 Wis. 431.

On the day the codicil was drawn *Robert* invited his father to accompany him to the city where the codicil was prepared. *Robert* disclaims any knowledge of what his father did during his stay in town that day. But he was in the lawyer's office when the codicil was executed although he was not in the same room. *Robert* profited by this codicil, which gave him a larger share of the personal property which was a considerable part of the estate because of the royalties which the father had received from a mine on the home farm which had yielded him a comparatively large sum.

The fact that the testator went to the lawyer's office alone and gave directions for the preparation of the codicil does not establish that no undue influence was exercised. The law recognizes that such influence may be exerted by subtle means which do not exhibit any show of force or influence at the time of the making of the instrument. Such means may be adopted as will control and master the human will at times when the person exercising the influence is not present and exerting that influence at the time a will or codicil is prepared. Influences which are potent enough to control the will of another may be sufficient to compel the person influenced to go through the mechanical process of giving directions for the preparation of a will or codicil and executing it in an apparently free and voluntary manner.

The proof presents this situation: There was a testator feeble in body and mind who was susceptible to the influence of those in whom he had confidence. There was also a confidential adviser who was in a position to exercise an undue influence if he so desired. There was a result so unnatural as to indicate that the testamentary disposition has been procured by undue influence on the part of some one. Where a testator is shown to be in a condition rendering him susceptible to undue influence and there was opportunity to exercise such influence and a result indicating its exercise,

slight additional evidence as to the disposition to exercise such influence may compel the inference of its existence. "This is especially true where the will is not what may be termed a natural one, such as relationship usually dictates." Where a will is not made according to the dictates of natural justice, "less proof may suffice, for legitimate inferences of infirmity may be drawn from its departure from natural justice." *Elliott v. Fisk,* 162 Wis. 249, 253, 254, 155 N. W. 110.

When the disposition of testator's property made by the codicil is viewed in the light of undisputed proof as to testator's acts and declarations, the evidence leaves no doubt in the mind of the court that the will was procured by undue influence. Testator had repeatedly declared that the homestead should go to *Louis* when he was through with it. That this intent was still in testator's mind after the codicil was drawn is shown by the fact that after the execution of the codicil he directed a painter to place the name of his son *Louis* on the barn. Still more significant is a conversation had by the testator with a friend, a disinterested witness, four days before his death. The testator said: "Where the people who were keeping you when you were old didn't get anything, . . . do you think a will like that will stand?" Upon being told that the witness thought it would stand, the old man "said he knew better than that and he knew a will like that would not stand. He said no court would say a will like that was good." Testator then became excited and so ill that the witness was compelled to leave his bedside. This testimony naturally suggests that the old man was thinking of the injustice done those who cared for him in his declining years and that he was seeking solace in the thought that no court would permit such an unjust and unnatural disposition of his property to stand.

It is also significant that the two sons, *Robert* and *Louis,* were not friendly to each other and that the recital in the

codicil that it was made "to in some measure balance up my property between my three living children" because he had heretofore given his son *Louis* considerable personal property is not in accord with the undisputed fact that the personal property given to *Louis* many years before the codicil was drawn was insignificant in value when compared with the property given to the testator's two other children by the codicil.

The court has considered the entire proof in this case in the light of the well established rule that every person has a right to dispose of his property by will as he desires and that, if the deceased has testamentary capacity and is not subject to undue influence, it is the duty of the court to give effect to the will, no matter how inequitable or unjust may be the disposition of testator's property.  In weighing the evidence the court has given due weight and careful consideration to the findings made by the trial court, but a most careful consideration of the entire record satisfies this court that the finding that the testator was under no restraint or undue influence at the time that the codicil was executed and that the codicil was not procured by the exercise of undue influence is so contrary to the clear preponderance and great weight of the evidence that it is not sustained by the proof.

*By the Court.*—The order of the county court admitting the codicil dated July 26, 1925, to probate is reversed, and the cause is remanded with directions to enter an order denying probate to the codicil.