Cutler vs. Cutler and others.

CUTLER, Respondent, vs. CUTLER and others, Appellants.

*April 26 — May 16, 1899.*

*Wills: Probate: Testamentary capacity: Undue influence: Evidence: Immaterial error: Advisory verdict.*

1. A testator at his death was eighty-seven years of age, had resided in the county where he died for sixty years, was a peculiar man, with marked characteristics, some eccentricities, illiterate, ignorant, and suspicious, but possessed of a vigorous mind. He had accumulated upwards of $60,000, was a widower without children, and had little to do with any of his kindred except one of his nephews, and his half-brother, executor of and sole beneficiary in his will, who resided in another state. The will offered for probate had been executed ten years before his death and without the knowledge of the sole legatee. The substance of the will had been talked over by testator with one of the subscribing witnesses, who thereupon, at the request of testator, procured the same to be drawn and took and read it over to testator, and the next day the testator signed it in the presence of three witnesses (with all of whom he had been more or less intimate), who all signed in testator's presence and at his request, and testator then put it in his safe. On the trial said attesting witnesses were sworn, and each testified that, at the time of the execution of the will, the testator was of sound mind and memory. *Held*, that the evidence supported findings that the will was executed in the manner and form required by the statutes, and that the testator was then of sound mind and memory and knew its contents.

2. The fact that a testator makes a different disposition of his property than that provided by statute does not, of itself, show fraud or undue influence. The burden of such proof is on the contestant in the absence of such circumstances as raise a presumption of fraud or undue influence.

3. In this case, it not appearing that the execution of the will was procured by or on behalf of the beneficiary, the will should be admitted to probate, notwithstanding the testator might have been induced to make the will through the influence of one of the subscribing witnesses.

4. On a contest over the probate of a will, the verdict of a jury is merely in aid of the court, and misconduct of officers and witnesses, which took place in the presence of the trial court, is not ground for setting aside the verdict and granting a new trial.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Affirmed.*

The facts are stated in the opinion.

For the appellants there was a brief by *Ryan & Merton,* attorneys, and *T. W. Parkinson* and *Weir & Weir,* of counsel, and oral argument by *T. E. Ryan* and *Mr. Parkinson.*

*C. E. Armin,* attorney, and *W. L. Eaton,* of counsel, for the respondent.

CASSODAY, C. J. Morris D. Cutler died January 22, 1897, at his home, in Waukesha, leaving an instrument in writing, purporting to be his last will and testament, executed September 20, 1886, wherein and whereby he gave, devised, and bequeathed to his half-brother, *James B. Cutler,* all his property, real and personal, and therein appointed *James B. Cutler* as sole executor of such will. At the time of his death he was a widower, with no children or grandchildren, but he left as his next of kin a full-brother, John O., residing in California; three nephews, the contestants herein, residing in Laporte, Indiana, and children of a deceased full-brother; and also four half-brothers, including *James B. Cutler,* and two half-sisters, residing in the states of Iowa, South Dakota, and California. The three nephews filed in the county court objections to the probate of such will, February 27, 1897, to the effect (1) that the instrument was not duly executed by Morris D. Cutler as his last will and testament; (2) that at the time of the execution of the same he was not of sound mind, and had not sufficient mental capacity to make a will; (3) that the execution of such instrument was procured by undue influence exercised over and upon Morris D. Cutler. Such proceedings were had in the county court that such will was admitted to probate April 2, 1897, and thereupon *James B. Cutler* was appointed executor of such will. On or about May 25, 1897, such contestants appealed therefrom to the circuit court. The cause was tried before the circuit court and a jury in January, 1898.

Cutler vs. Cutler and others.

Upon such trial the court submitted five questions to the jury, which, at the close of the trial, were answered to the effect (1) that the paper writing presented for probate as the last will and testament of Morris D. Cutler, deceased, was executed in conformity with the provisions of the statutes of this state relating to wills; (2) that Morris D. Cutler, deceased, did so execute the alleged last will and testament with full knowledge of its terms and provisions; (3) that Morris D. Cutler, deceased, was of sound mind, having testamentary capacity, when he executed the alleged last will and testament; (4) that the alleged will and testament was his own voluntary will, act, and deed; (5) that the alleged last will and testament was not obtained, nor the execution thereof procured, by fraud or undue influence used and exerted upon him.

After such special verdict had been entered of record in the circuit court, that court found as matters of fact (1) that Morris D. Cutler, deceased, duly made and executed, as and for his last will and testament, the proposed will offered in probate, and did duly make, execute, and acknowledge the same to be his last will and testament, September 20, 1886, at Waukesha; (2) that he so executed the same of his own free will and accord, without any influence being brought to bear upon him whatever, and without any fraud being practiced upon him, and that he was not under undue influence at the time of the making and subscribing of the will, and that in the execution thereof he duly complied with all requirements of the statutes of Wisconsin; (3) that he so executed the will with full knowledge of its terms and provisions, and that at the time of the execution thereof he was of sound mind and memory and competent to make a will; (4) that the same was his own voluntary will, act, and deed; (5) that the contestants were the nephews of the deceased; (6) that the deceased was at the time of making the will, and from thence on up to the time of his decease, a widower, without children, and that from the date of making

the will up to January 22, 1897, when he died, he was an inhabitant of Waukesha, Wisconsin.

And as conclusions of law the court found, in effect, that the will so offered for probate was entitled to probate in the county of Waukesha as the last will and testament of the deceased, and the same thereby was admitted to probate as the last will and testament of the deceased; that judgment should be entered by the circuit court admitting to probate the will of Morris D. Cutler, deceased, and affirming the judgment of the county court admitting the same to probate, and that the record and proceedings therein should be transmitted to the county court of Waukesha county for further proceedings according to law; and that the proponent's costs and attorney's fees in the circuit court should be paid out of the estate of the deceased.

From the judgment entered in accordance with such findings the contestants bring this appeal.

At the time of his death the testator was eighty-seven years of age, and had resided in Waukesha for sixty years. He was manifestly a peculiar man, with marked characteristics and some eccentricities. He accumulated a considerable property, located in Iowa, Minnesota, and Wisconsin. The petition for the probate of his will states the amount of his property at about $60,000, but it is said to have been two or three times that amount. He was illiterate and ignorant, and hence suspicious; but his accumulations were evidently the result of his own frugality, forecast, and judgment. He was temperate in his habits, simple in his manners, and economical in his methods. He was naturally reticent, but had a vigorous mind, with fixed notions of his own, formed in early life, not in perfect harmony with the more expensive methods of many who surrounded him in his later years. To those whom he liked he was kind, and even generous. Several of his kindred received bounties at his hands, but some of them would seem to have been more

or less annoying to him; and in his old age he appears to have had little to do with any of them, except one of his nephews and his half-brother *James B. Cutler*, with whom he had more or less correspondence and dealing for nearly thirty years before he died.

The will purports to have been executed more than ten years prior to his death, under circumstances to the effect that Malcolm Sellers, who resided at Waukesha and did business as a merchant for seventeen and one-half years prior to December 9, 1869, and who during all of that time was a warm personal friend of the testator, with whom he frequently consulted on matters of importance, moved to Ft. Howard on the day and year last mentioned; that afterwards such friendship continued; that Sellers frequently visited Waukesha, in some years several times, and sometimes at the request of the testator; that Sellers was a justice of the peace at Ft. Howard, and in 1885 the testator first spoke to him about disposing of his property to his half-brother *James B. Cutler;* that Sellers talked in favor of his other relatives, as *James B.* already had enough; that the testator said *James B.* had always stood by him, and knew more about his property, and he wanted him to have the entire control of it; that he spoke to Sellers again about the matter a short time before the will was drawn; that Sellers told him that he was incapable of drawing the will, but that he had a friend, Judge Ellis of Green Bay, who could draw it; that at the request of the testator he had Judge Ellis draw the will; that he then took it and went to Waukesha, and read it over to the testator, and the next day the testator signed it in the presence of himself and the two other subscribing witnesses, each of whom signed in the presence of the testator and at his request; that after it was so executed the testator put it in his safe; that Sellers was at the time of executing the will seventy-six years of age; that John S. Eckert, another subscribing witness to the will,

was at that time over seventy years of age, and had resided in Waukesha, and was acquainted with the testator, for more than twenty years prior to the execution of the will, and took care of him for the last two and one-half years prior to his death; that the other subscribing witness, William S. Green, had been a resident of Waukesha, and he was located directly across the street from the testator's home, for twenty-two years prior to the execution of the will, and had taught school, and held the offices of county clerk, county superintendent, clerk of the court, and justice of the peace, in the aggregate, for sixteen years.

These three subscribing witnesses were all well acquainted with the testator, and more or less intimate with him. Apparently, none of them had any interest in the transaction, nor any motive to depart from the exact truth. Their testimony amply supports the findings that the will was executed in the manner and form required by the statutes. So there is plenty of evidence to support the findings that the testator was, at the time of executing the will, of sound mind and memory. The subscribing witnesses all so testify, and there is considerable other testimony to the same effect. The letter written by the testator to *James B. Cutler* four days after the execution of the will certainly does not tend to prove mental incapacity, but, on the contrary, tends strongly to prove his mental capacity at the time. The letter covers one page of the printed case. After indicating that he felt pretty well, but could not brag much, his letter is devoted wholly to business matters. Of course, it is the letter of a very illiterate man, but it contains nothing indicating mental incapacity. Certainly the mere fact that he did not therein inform *James B.* that he had made his will proves nothing. So the evidence supports the findings that the testator knew the contents of the will at the time he executed the same. It would serve no useful purpose to discuss the different phases of the evidence pertaining to these ques-

tions. He lived more than ten years after making the will, and during that time he managed his own property, and made numerous conveyances, without any question as to his mental capacity to transact business. The evidence tending to prove that he would occasionally have bad spells, and would faint or have fits, or make foolish remarks, or that his memory was not as active as when younger, is insufficient to establish mental incapacity,— much less, to overcome the findings that he was of sound mind. The essentials of mental capacity have been so frequently stated by this court as to require no reiteration.

The principal contention of counsel for the contestants is that the will is unnatural, and must have been procured by fraud or undue influence. The only object in making a will is to make a different disposition of property than that provided by statute. The right to dispose of property by will includes the right to disinherit brothers and sisters and nephews and nieces. The testator was not obliged to give any reason or explanation why he favored one relative over the others. If the will is the result of his free and voluntary act, then no relative has any legal ground for complaint. If it was procured by fraud or undue influence, then the burden of proving it was on the contestants. In some cases, it is true, the circumstances are such as to raise a presumption of fraud or undue influence. *Disch v. Timm*, 101 Wis. 179, 189–192, and cases there cited. But this is not such a case. None of the natural objects of the testator's bounty were in Waukesha or Wisconsin at the time of the execution of the will. They all resided in distant states. The favored devisee and legatee resided in Osage, Iowa, hundreds of miles distant from Waukesha. There is no evidence that *James B. Cutler* had anything to do with the execution of that will, directly or indirectly. There is no evidence that prior to the execution of the will he had any knowledge or information that such a will was to be made, or that the testator

contemplated the making of such a will. Even the letter written to him by the testator four days after the execution of the will contained no reference to the will.

The contention is that the testator was induced to make the will through the influence of the subscribing witness Sellers. But there is no evidence that Sellers's connection with the execution of the will was procured by or on behalf of *James B. Cutler*. On the contrary, it appears that they had no communication upon the subject. Counsel for the contestants concedes that the only motive Sellers could have had in procuring or influencing the testator to make such a will was the possibility of being eventually compensated by *James B. Cutler*. Such conjecture, based upon such remote possibility, can have no influence in reaching a judicial determination. The findings that the will was not obtained nor procured by fraud or undue influence, but was the free and voluntary act of the testator, are supported by the clear preponderance of the evidence, if not by the undisputed evidence.

Error is assigned because the court refused to set aside the verdict and grant a new trial, based upon affidavits to the effect that one Don McKay (another nephew of the testator, and who had been in his employ from 1889, and was a witness upon the trial, and conceded that he had received a deed of a piece of land from the testator worth some $15,000, and as such employee of his uncle had custody of the will in question) was during the trial deputy sheriff of Waukesha county, and as such did several acts in and about the court room prejudicial to the contestants, and that the witness Sellers, who was sworn and examined in this case in the county court, and his testimony there taken, by stipulation, read in the circuit court, had not acted in good faith, in failing to appear and testify in the circuit court, and in failing to appear and further testify before a notary public at Green Bay. Such affidavits were contradicted or explained by counter affidavits, and by the affidavit of a

physician who had for two months immediately preceding had professional care of Sellers; and who stated that Sellers had been suffering from chronic bronchitis and asthma, and general debility resulting therefrom, and that in his opinion it was entirely unsafe for Sellers to be examined in any matter. From a careful examination of the affidavits on both sides, we cannot say that the determination of the questions presented upon such motion to set aside the verdict and for a new trial is against the weight of evidence. *Grottkau v. State*, 70 Wis. 462; *Carthaus v. State*, 78 Wis. 560, 567. So far as such alleged misconduct took place in the presence of the trial court, that court was perfectly competent to determine the propriety of the same, even without affidavits. *Lego v. Shaw*, 38 Wis. 401, 407; *Challoner v. Boyington*, 86 Wis. 219, and cases there cited. Besides, this is essentially a case in equity. The verdict of the jury was merely in aid of the court. There was no good ground for setting aside the verdict and granting a new trial. The same is true in respect to the criticism of the charge of the court by reason of its length, and for the failure to charge to the effect that, if the will was obtained by fraud at the time it was executed, then it continued to be void, and could not be validated by subsequent ratification.

We find no reversible error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.