WILL OF BOCKER: CLARK and others, Appellants, vs. MUELLER, Respondent.

*February 7—March 5, 1918.*

*Wills: Validity: Undue influence.*

1. Where the chief beneficiary under a will had opportunity and the disposition to influence the testatrix, and the coveted result expressed in the will was attained by coercion, not by importunity merely, the will must be set aside.
2. The evidence in this case is *held* to show, contrary to findings by the county and circuit courts, that undue influence was exercised upon a testatrix by an adopted daughter to whom practically the whole estate was given.

APPEAL from a judgment of the circuit court for Sheboygan county: CHESTER A. FOWLER, Judge. *Reversed.*

The appeal is from a judgment admitting the will of Johanna Bocker, deceased, to probate.

March 29, 1916, Johanna Bocker, a widow for over thirty years and more than that length of time a resident of the city of Sheboygan, died. She left property valued at between $25,000 and $30,000 in mortgages, which she had accumulated by her work as a midwife and by a life of the most rigid economy. She left as her only surviving heirs one grandchild, *Mrs. Theresa Clark,* four great-grandchildren, children of two predeceased granddaughters, and an adopted daughter, *Selma Mueller,* who is the proponent herein. The will, which was executed January 20, 1916, and admitted to probate in the county and circuit courts below, after the usual clause directing the payment of debts

and funeral expenses gave to the grandchild and the great-grandchildren each $5 in cash. By the third paragraph all the rest, residue, and remainder of the estate, both real and personal, was given to her adopted daughter, *Selma,* and recited further:

"It is the declared purpose by this my will, to restrict and limit my said grandchild and my said great-grandchildren's interest in my estate under this my will, in any event to the bequest of five dollars given each and no more."

*Selma* was appointed executrix of the will, and request was made that she be allowed to settle the affairs of the estate without giving a bond.

*Selma,* who was a child of a sister of the deceased, came to Sheboygan, Wisconsin, from her birth place in Germany at the request of the deceased about thirty-one years preceding 1916, then a child of about thirteen years of age, and lived with the deceased from that time continuously until the death. *Selma* was required by the testatrix to perform a great deal of drudgery and hard work and at times had gone to work in a factory and at other places and turned her earnings in to the deceased. In 1908 *Selma* was formally adopted by Mrs. Bocker, and in 1913 married one Philip Mueller. Shortly after the marriage the homestead, worth between $3,000 and $4,000, was conveyed by Mrs. Bocker to *Selma,* who, with her husband, continued to reside there with Mrs. Bocker. Neither Mrs. Bocker nor *Selma* had educational advantages to speak of and could barely read or write. Mrs. Bocker was a woman of vigorous and dominant personality and extremely secretive about her business affairs; apparently no one other than a Mr. Clarenbach, who looked after her investments, knew, prior to her death, the amount of her property.

Three of the great-grandchildren lived in Sheboygan, and the grandchild visited there occasionally, and these four were visitors at the home of Mrs. Bocker from time to time, but

there was evidently no great amount of affection between them, and the situation in that regard appears to have undergone no change for many years preceding the death of Mrs. Bocker.   The adopted daughter, *Selma,* was, as it would appear from the record herein, somewhat below the average in mentality, and until the last few years at least quite absolutely under the control and direction of Mrs. Bocker.

Several wills had been executed by the testatrix prior to the one of January 20, 1916.   The last preceding will was drawn by an attorney in Sheboygan and executed by Mrs. Bocker sometime in the fore part of December, 1915.   About December 28th Mrs. Bocker had a Dr. Tasche, a long-time friend and one who occasionally attended her as a physician, come to her house and had him read and translate to her the will that had been executed a few days before.   This was done in the presence and hearing of *Selma,* and after it had been read and translated it was torn up by Mrs. Bocker and at her direction burned.

The will of January 20, 1916, was drawn by a neighbor engaged in the real-estate business who had never done any business for Mrs. Bocker before.

Both the county and circuit courts found that there was no undue influence exercised upon the testatrix by *Selma Mueller* and that the will should be admitted to probate, and from such determination by the circuit court the contestants appeal.

For the appellants there was a brief by *Edward Voigt* and *Bowler & Bowler* of Sheboygan, and oral argument by *T. M. Bowler.*

*Otto J. Trilling* and *F. H. Denison* of Sheboygan, for the respondent.

ESCHWEILER, J.   The court below, in his written decision upon which the findings were based, stated as follows:

"That some of the facts essential to void a will for undue influence existed is very plain.   The adopted daughter had

ample opportunity to exert influence over the deceased, and she had the disposition to use such influence.    She also importuned the testatrix to make a will, and the will made was such as the adopted daughter wanted.    But does it appear that the deceased was 'unquestionably subject to undue influence,' and how much evidence is there of overt acts of the adopted daughter after the former will was revoked?    The deceased was obviously a strong-minded and strong-willed woman and she retained her faculties unimpaired to the last, except as to hearing, and there was no change in that respect for a long period prior to her death.    That the adopted daughter importuned her not only to destroy the former but to execute the last will I have no doubt.    But that she coerced the will of the old lady, that is, overpowered her will and rendered her incapable of exercising her free will power, I do not feel convinced."

From such decision it appears that there was but one element lacking in order to meet the essential requirements to warrant setting aside a will because of undue influence. *Skrinsrud v. Schwenn,* 158 Wis. 142, 147 N. W. 370.    Opportunity to influence, disposition to influence, and the coveted result are all present and so found.    If the court erred in holding that there was not sufficient in the record to warrant a conclusion, based upon clear and satisfactory evidence, that the result expressed in the will was attained by the coercion, not importunity merely, of *Selma,* then the will must be set aside.    *Elliott v. Fisk,* 162 Wis. 249, 155 N. W. 110.

Although giving full force to the rule that must and does govern us in disposing of questions of fact, namely, that the findings of the trial court, with the advantages he has in hearing and seeing the witnesses, stand on a more than substantial footing, yet the facts and circumstances in this case convince us that the court below in his findings stopped just short of reaching the right result.    We base this conclusion upon the following facts and situations:

In 1908, when *Selma,* then a woman of about thirty-six

years of age, was adopted, Mrs. Bocker expressed herself as desirous of taking such step in order that she might properly or safely will her property to *Selma;* yet notwithstanding such expression of intention, in the will executed by her in December, 1915, she provided that there should be paid to her grandchild, *Mrs. Clark,* the sum of $2,000, to the four great-grandchildren $500 each, to two nieces in Germany, sisters of *Selma,* $500 each; $100 to the widow of a deceased grandchild, and $500 to a church in Sheboygan; the remainder going to *Selma.* This would have given at least $20,000 to *Selma* over and above the homestead theretofore conveyed. There is no question, and it is conceded by all, that at the time of the executing of the will Mrs. Bocker was competent to make such an instrument and fully realized what she had, to whom and how it was given. It was a natural and proper disposition of her property among those who were related to her by the ties of blood, and it also recognized very substantially the long years of service that *Selma* had rendered to her adopted mother.

Considerable protest was made by *Selma* to the provisions of this will at the time the same was being executed so far as it provided for any one than herself, even begrudging to her sisters the small amount that was left to them, for she, not knowing the amount of property that would be left after the specific bequests of $6,500 had been paid, seemed to fear that there was probably little, if anything, left for her.

When the friend and physician, Dr. Tasche, was called December 28, 1915, and requested by Mrs. Bocker to read the will so shortly before executed by her, *Selma* persisted in remaining within hearing and expressed herself in vigorous language about the contents of the will and about the other beneficiaries therein; that the relatives other than herself were not entitled to share in the property in view of the fact, as she expressed it, they had not helped in the work. Mrs. Bocker without much, if any, expression of dissatisfaction

herself as to the terms of the will, tore it up and directed that
it be burned, as it was.

At this interview, according to the testimony of Dr. Tasche,
and there is little, if anything, to cast any discredit upon
his testimony, Mrs. Bocker remarked that *Selma* was ever-
lastingly after her to have the will changed and that she,
Mrs. Bocker, felt that if it wasn't changed she wouldn't be
at peace.

At this time Mrs. Bocker was quite feeble, could no longer
go out, and required the help of crutches or of some person
in order to move about the house. There was talk at this
time of it being necessary to have her taken care of in the
hospital. To this proposal Mrs. Bocker was very much op-
posed. There was testimony of a neighbor, Mrs. Braun, to
the effect that *Selma* stated to her that unless Mrs. Bocker
changed her will that she, *Selma,* would leave her. Such ac-
tion by *Selma* would undoubtedly have resulted in Mrs.
Bocker's going to the hospital.

Some stress was evidently laid by the trial court upon the
fact that there was no evidence of any overt acts tending to
show the exercise of undue influence by *Selma* in the inter-
val between the destruction of the one will and the execu-
tion of the one here. But it does appear that during this
same interval there was no one else living in the house with
this infirm old lady than *Selma* and her husband. Those
two had full control of the situation. From *Selma's* own ad-
missions it appears that the subject of this will was dis-
cussed between herself and Mrs. Bocker during this same in-
terval.

*Selma* having been called as an adverse witness by the con-
testants was examined fully as to the situation between her-
self and Mrs. Bocker, and by such examination and conse-
quent waiver of any objection to her testifying on her own
behalf as to transactions with the deceased was afforded
ample opportunity to explain the entire situation. There

is no satisfactory explanation by her as to this great change in the disposition of Mrs. Bocker's property as expressed by the two wills.

We feel that the logic of the situation made it incumbent upon a proponent of a will, situated towards the maker of it as *Selma* was towards Mrs. Bocker, to meet and overcome the natural and irresistible presumption that arose from this un-explained change in the two documents, when there was such clear proof of the disposition to exercise undue influence, such abundant opportunity to exercise it, and where a so ar-dently desired result is so plainly manifest. It cannot be ascribed to mere importunity when we consider that in spite of the years that elapsed between 1908, when Mrs. Bocker took definite steps to adopt *Selma* that she might be in a po-sition to safely, in her judgment, reward her in her will, up until the time she made the will in December, the years of service rendered by her, and the obligation Mrs. Bocker evi-dently felt under towards her, had not been sufficient to cause Mrs. Bocker to overlook the considerations of the ties of blood that bound her to those whom she mentioned in that will.

To us, under the record in this case, there is no escape from the conclusion that the complete reversal by the will herein from the natural disposition of the will of December was arrived at by far more than mere importunity on the part of *Selma.* This old, dying woman of eighty-nine, fear-ing that she might have to pass her last days in the—to her—dreaded hospital instead of her own home, wishing the peace in those last days that could only be obtained by a yielding on her part, did at last bend her will to that of the, for once, superior force and power that circumstances had finally placed with *Selma,* and the latter's greed ought not to be re-warded.

*By the Court.*—The judgment of the circuit court is re-versed, and the cause remanded with directions to enter

judgment denying the probate of the document of January 20, 1916. Contestants to have their costs and disbursements in this court and in the court below.

SIEBECKER, J., dissents.