WILL OF EHLKE: RAMLOW, Respondent, vs. WOLF, Appellant.

*October 13—November 9, 1943.*

FOWLER, J.  The case is an appeal from an order of the county court of Milwaukee county admitting an instrument to probate as the last will of Bertha Ehlke.  Heirs of the decedent filed objections to the admission on the grounds that the deceased was incompetent, and that the instrument was procured by undue influence upon her by Mrs. Ramlow, a daughter, the person named therein as the principal legatee. The two witnesses who witnessed the will testified to its due execution.  In offering the instrument for probate only these two persons were called to testify.  Neither of them testified as to the mental competency of Mrs. Ehlke.  One of the witnesses, Miss Heinl, did not know Mrs. Ehlke, but had been called once before to sign as a witness to her signature and had no conversation with her other than about the weather when introduced to her.  The witness testified that Mrs. Ehlke seemed "very bright," and that her physical condition was good.

The other witness, Mrs. Skorik, was the secretary of Mr. Kay, the attorney who was consulted with reference to the contents of the will and who dictated it to Mrs. Skorik as she wrote the instrument on a typewriter from his dictation, said Mrs. Ehlke at the time appeared "alert."  She had seen Mrs. Ehlke on two previous occasions when she came with Mrs.

Ramlow to the office of Mr. Kay, but had no conversation with her except as to the weather, etc. Mrs. Skorik did not hear the conversations when Mr. Kay was directed how to draw the will. Mrs. Ehlke talked broken English and German. Mr. Kay asked the witness to explain the will to her in German, which she did, and she testified that she went over it "ten words at a time and we asked her after every ten words if she understood it." The will was also read to her in English slowly by Mr. Kay. Mrs. Ehlke appeared to the witness "healthy and energetic."

At the conclusion of the testimony of these two witnesses the contestants proceeded with their proofs. The testatrix was eighty-two years old when the will was executed. She had been afflicted for many years prior to her death with what the trial court designated as "seizures or fits," which were "epileptic spasms" according to the testimony of the contestants and is not denied, and these were more frequent and violent and increased in length during the later years. They occurred as often as two or three times a day at times. The trial judge stated that these fits did not render the decedent incompetent to make a will between spells, and this is no doubt correct, but the facts in connection with them, in view of her age, bear strongly on the decedent's susceptibility to influence exercised by Mrs. Ramlow. Mrs. Ehlke lived with Mrs. Ramlow for nineteen years prior to her death, but until the death of Mrs. Wolf, a daughter of decedent, which occurred in 1940, Mrs. Wolf had charge of her business affairs. Her bank account was a joint account with Mrs. Wolf, and her papers were kept in a joint bank-deposit box to which each had a key. After the death of Mrs. Wolf, Mrs. Ramlow's name was substituted for Mrs. Wolf's in the joint account and the holding of the deposit box. The instrument in probate was executed January 17, 1941. A prior will was executed in 1930 by Mrs. Ehlke which divided the property between her three children, Mrs. Wolf, Mrs. Ramlow, and a son,

William, giving to Mrs. Wolf one half of the property, to Mrs. Ramlow, three eighths, and the son one eighth. That will, were it now probated, would give to the children of Mrs. Wolf, under sec. 238.13, Stats., the share Mrs. Wolf would have taken had she survived her mother. That share by the instrument in suit goes wholly to Mrs. Ramlow and the son. The instant instrument recites that nothing is given by it to the family of the daughter, Mrs. Wolf, because they had "already been given an amount equal to or in excess of the amount given to the two other children." But it is of significance that after making the will Mrs. Ehlke received back by deed the property on which she had taken a mortgage from Mr. Wolf to secure $5,000 which she had loaned him, which inferentially was part at least of the amount referred to as given to Mrs. Wolf's family. It is also of significance that prior to the making of the will, Mrs. Ehlke had executed without consideration a satisfaction to Mrs. Ramlow of a $6,200 mortgage. It is also significant that on the day before this satisfaction of the Ramlow mortgage was executed, which was two weeks before the will was executed, Mrs. Ehlke had by the satisfaction given to Mrs. Ramlow more than the evidence shows she had let the Wolfs have, and the recital in the will that she had given the Wolfs more than Mrs. Ramlow was inferentially false. It is also significant that on the day before the $6,200 mortgage was satisfied Mrs. Ramlow had had prepared and herself sworn to a petition for appointment of a guardian for Mrs. Ehlke, declaring that Mrs. Ehlke was "mentally incompetent to have charge and management of her property by reason of her advanced age" of eighty-one years. It is also significant that Mrs. Ramlow withdrew this petition from Mr. John who drew it for her and who drew the first will, and that when the alleged will was executed Mrs. Ehlke was brought to Mr. Kay's office and was present while its contents were so laboriously explained to Mrs. Ehlke that the extreme laboriousness of the explanation would itself seem to indicate

that Mrs. Ehlke was not at the time in possession of normal mental faculties.

It is also of significance that while Mrs. Ramlow had the petition for guardianship drawn by Mr. John, the attorney who drew Mrs. Ehlke's will of 1930, with the purpose of having him act as her attorney in procuring the appointment of a guardian, she withdrew the original the next day and on the next day went to Mr. Kay instead of Mr. John to have the $6,200 mortgage released, and again went to Mr. Kay instead of Mr. John to have the new will drawn. Mrs. Ramlow professed on the witness stand not to know what had become of either the petition for guardianship or the first will although the first will was in the safety-deposit box when Mrs. Ehlke died. A query naturally arises why did not Mrs. Ehlke withdraw the first will from the safety-deposit box and destroy it if she realized that she had made another will and was mentally competent? It does not appear that the new will was given to Mrs. Ehlke after it was executed. It is also significant that when the satisfaction of the Wolf mortgage by Mrs. Ehlke and the deed back were given, Mrs. Ramlow was present and "dominated" the transaction, and that Mrs. Ehlke asked her whether she should sign and Mrs. Ramlow answered "It is about all we can do."

It is also of significance that when called adversely Mrs. Ramlow testified that for ten years Mr. Ramlow paid Mrs. Ehlke $248 every year in cash as interest. She produced cards and slips of paper each purporting to be a receipt for $124. All these but two or three are dated prior to the death of Mrs. Wolf. Some of them are in handwriting, evidently that of Mrs. Ramlow, and the rest were typed by her. They purport to be given every six months in April and October as interest on the $6,200 mortgage. It is apparent from inspection of these that five of them were not executed at the time they bear date. Two bearing date October 1, 1937, and April 1, 1938, were typewritten on identical cards and iden-

tically lined and of identical type impression and signed by Mrs. Ehlke with the same pen and ink. They were manifestly written at the same time. Two of them dated August 15, 1936, and April 1, 1936, are typed, identically lined, of identical type impression, and on two slips of paper, torn from the same sheet of paper, two torn edges of which fit together exactly, and they are signed with the same pen and ink. Four of them, dated April 1, 1938, October 1, 1938, April 1, 1939, and October 1, 1939, are typed on four slips of paper, torn from the same sheet of paper and signed with identical pen and ink. The bottom of the slip dated October 1, 1938, fits exactly the torn top edge of the slip dated April 1, 1939; the bottom of the latter slip fits exactly the torn top edge of slip dated October 1, 1939, and the bottom of the latter fits exactly the torn top edge of the slip dated April 1, 1938. The four together make a complete 8½x11 sheet of letter paper, and the type impressions on the four are identical.

At the close of the testimony of the contestants, Mr. Kay moved for admission of the instrument proffered for probate, without offering any evidence. The court invited arguments and the next morning announced the admission of the instrument to probate as Mrs. Ehlke's will.

In *Estate of Weaver,* 191 Wis. 431, 433, 211 N. W. 130, it is stated:

"The rule established by the leading case of *Davis v. Dean,* 66 Wis. 100, 110, 26 N. W. 737, has been repeatedly approved and applied in will cases. It is there held that, where an aged and infirm person makes disposition of his property under circumstances that arouse suspicion and in such a way as to inflict injustice upon the heirs of such aged person, the law casts upon the one who profits by such disposition of property the burden of showing that such disposition was untainted with undue influence."

The facts above referred to herein as significant seem to us such as within the rule of the *Dean Case, supra,* throw upon

the proponent the burden of showing that the disposition made by the instant instrument "was untainted with undue influence."

While if the case stood alone upon the testimony direct to the point of Mrs. Ehlke's mental incompetency we would not disturb the ruling of the trial judge, an "impaired and enfeebled condition of his mind" renders a person "more susceptible to undue influence" than if the person were of an unimpaired mental vigor. *Bryant v. Pierce,* 95 Wis. 331, 70 N. W. 297. Susceptibility to such influence seems much more apparent in this case than in *Will of Bocker,* 167 Wis. 100, 166 N. W. 660, where the mental capacity of the testatrix except for undue influence was more apparent than here. The will was refused probate in that case solely on the ground of undue influence by the person who profited by the revocation of a previous will by the will offered for probate. It is true that in that case there was direct evidence tending to show attempts to exert influence and here there is none, but undue influence may rest and usually does rest wholly upon circumstantial evidence. *Will of Leisch,* 221 Wis. 641, 648, 267 N. W. 268. To make out a case of undue influence there must be shown (a) opportunity to exercise influence; (b) disposition to exercise influence; (c) susceptibility of the subject to influence by the person having the opportunity; and (d) a result indicating the exercise of undue influence by such person. The clear establishment of three of these elements may, however, with slight additional evidence as to the fourth, compel the inference of its existence. *Will of Stanley,* 226 Wis. 354, 276 N. W. 353; *Will of Bocker, supra.* While the trial judge considered only (a) of these established by the evidence, we think it plain that (b) and (d) clearly appear, and that sufficient evidence of susceptibility (c) exists at least to throw the burden of proving absence of undue influence upon the proponent. The disposition would seem to appear clearly from the procuring of the release of the $6,200 by Mrs.

Ramlow and from the procuring of the reconveyance of the premises covered by the $5,000 mortgage by Mr. Wolf. Application of the rule of the *Bocker Case* would require denial of the will to probate. But inasmuch as the proponent's counsel offered no evidence to rebut the presumption of undue influence, to which course he was patently invited by the trial judge, we consider that the case should be reversed with direction for a new trial.

*By the Court.*—The order of the county court is reversed, and the record remanded with direction for a new trial.