WILL OF LEE: McBRIDE, Proponent, Appellant, vs.
OSTVALDEN and others, Objectors, Respondents.

*May 22—June 22, 1946.*

For the appellant there was a brief by *Hale, Skemp &* *Nietsch* of La Crosse, and oral argument by *Thomas H. Skemp.*

*Albert C. Wolfe* and *Otto M. Schlabach,* both of La Crosse, for the respondents.

FAIRCHILD, J.   It cannot be seriously urged that there is a lack of evidence tending to support the findings of fact or that the findings of fact do not support the conclusions reached below.   It is, however, earnestly contended that the rule of law as to weight of evidence was misapplied and that the usual presumption in favor of the findings does not exist under the circumstances.   The appellant insists that the memorandum opinion of the learned trial judge indicates a disregard of the rule as to the degree of convincing power of evidence necessary to prove incompetency of the testator.   It is well-settled that the burden of showing incompetency rests upon the one contesting the will to establish that fact by proof that is clear, convincing, and satisfactory.   *Will of Grosse* (1932), 208 Wis. 473, 243 N. W. 465; *Will of McLeish* (1932), 209 Wis. 417, 245 N. W. 197.   An examination of the decision of the trial court, although it does not contain those exact words, reveals that the proper test was applied.   The trial court said: *"The great preponderance* of the evidence indicates clearly that at the time the will was made, Mr. Lee was suffering from a disease which had so affected his mind and body that he was in a dying condition and did die ten days after the will was executed.   That his mental capacity was insufficient for him to keep in mind the objects of his bounty."   The court was clearly of the opinion that old age and physical debility had resulted in a condition rendering him incapable of comprehending the effect of the instrument.   Considering the language used and the tenor of the entire opinion, there is no

doubt that the court was convinced that the evidence it regarded as controlling, *i. e.,* the testimony given by the witnesses who in his judgment were telling the truth, was clear, convincing, and satisfactory, and that he therefore applied the proper standards of proof in judging the testimony presented at the trial.

Only if, in judging the testimony with the rules as to the burden of proof in mind, it is revealed that the evidence supporting the findings that the testator was incompetent and the will a result of undue influence are against the required weight and convincing power of the evidence, can we set the findings aside and reverse the judgment.

The history of Mr. Lee, so far as it relates to the execution of the will, is that in the September preceding he was still in a normal condition of mind and body. At that time, with the advice of his lawyer, he made a will which has all the aspects of a normal and usual last will and testament of a man with a daughter, grandsons, and nieces and nephews. On the following May 11th, following the stroke, he becomes a changed individual. The evidence upon which the learned trial judge rested his decision shows a complete change in appearance and habits. This condition became more and more emphasized in the deceased as the few remaining days passed by. This change from a life of frugality and careful husbanding of his resources to one of indifference to costs was accompanied by lapses indicative of loss of mental as well as of physical powers. The change followed closely upon a collapse from a sufficient cause. Although he was not attended by a physician, an experienced nurse observed him and testified as to his condition. Many isolated instances of the unusual are detailed. He was incoherent, did not recognize persons whom he had known many years and with whom he had associated continuously. His intimate friends testified in substance that in May, June, early July "he wasn't his former self. . . . Prior to 1944 everything was sensible talk and after that it

was piecemeal, it wasn't right." He talked about marrying Mrs. McBride whose husband was living. She had been a tenant of the deceased for a number of years, but before July 10, 1944, he had constantly expressed a feeling of antagonism toward her. After the occurrence on May 11th, with the resulting loss of control of his bodily functions, he was advised to consult a doctor, and upon his refusal was asked to pay an additional amount of rent because of the extra work he was causing. This provoked him and evidence of his conduct impressed the trial court as childish. He did on July 10, 1944, approach the appellant with the request to enter her home as a regular boarder. This was prompted by the fact that his friends, including Mrs. Allen, in whose boarding home he had lived for many years, were urging him to go to a hospital or at least consult a physician. He was determined not to have anything to do with hospitals or doctors. Instead of paying $2 more per month he gave to the appellant property worth $6,000 with a provision, only, that he was to have his room and board. The deed provided that the appellant could cause him to be removed to a hospital and have a physician attending, all at the deceased's own expense. And in addition to giving her the house in the condition it was, he agreed to install a new furnace. The will in question gave her, in addition to the house, one half of the residue of his estate after bequests of $100 a piece to his grandchildren, although on the 17th of July, or thereabouts, he handed over to appellant all of his bonds, securities, and abstracts. Within ten days after drawing the will, Mr. Lee died.

The testimony opposing these facts, which speak for themselves, may be said to revolve largely around the acts and testimony of the scrivener of the will. But it is apparent from the reading of his testimony that he discredited himself by his overprotesting his innocence of any attempt to influence the deceased and his assurance to the court that the appellant was "too religious" to take advantage of anybody. In addition to

the old friends who testified as to his mental condition, a neurologist gave as his opinion that at the time of the signing of the paper Mr. Lee was suffering from old age and senility; that an old person in that condition was easily influenced and childish, and that in his opinion Mr. Lee was not competent to make a will. Dr. Daley, who was called in to attend the testator shortly before he died, was not permitted to testify. While no specific objection is aimed at the refusal to admit his testimony, we are satisfied that no prejudicial error could, in any event, have occurred because of the plentitude of evidence of incompetency and undue influence.

It does not seem to be necessary to further review the testimony in this long record, other than to say that the whole history ties in with senility. The record describes an old man who, following a severe cerebral disturbance, changes in appearance, habit, and manner, becomes forgetful, childish, and unable to carry on a conversation. This evidence, considered in connection with his last will and testament, which gives the major portion of his property to a woman with whom he had no ties of blood or affection, clearly support a finding that he lacked the mental competency to comprehend the nature of the act he was performing.

The finding of undue influence also is supported by the record. The mental weakness of the testator, proof of which is abundant in the record, may be taken into account in determining whether undue influence or fraud has been perpetrated. As a result of his senile condition, deceased was certainly a subject susceptible to influence; the proponent, who had already received a $6,000 home in return for caring for a man whose days were numbered, was disposed to exercise such influence, and the result, an unnatural will, shows clearly that undue influence had been exerted. With three of the four elements necessary to constitute undue influence satisfactorily appearing, only slight additional evidence as to the fourth is necessary. *Will of Link* (1930), 202 Wis. 1, 231 N. W. 177.

*By the Court.*—Judgment affirmed.