EIDEN, Special Administrator, Respondent, vs. HOVDE and wife, Appellants.*

*January 9—February 5, 1952.*

* Motion for rehearing denied, with $25 costs, on April 8, 1952.

For the appellants there was a brief by *Curran & Curran* of Mauston, and oral argument by *Charles P. Curran*.

For the respondent there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *Warren P. Knowles III*.

MARTIN, J. The complaint herein alleges a conspiracy among the nephews and nieces of August Anderson, the purpose of which was to deprive the rightful heirs and beneficiaries of their share of the property of the deceased; that the appellants and others conspired to prevail upon August Anderson to deed all of his real estate to his nieces and nephews; that the grantor was aged, infirm, mentally incompetent, and susceptible to undue influence; and that the appellants, together with others, did exercise undue influence upon him and prevailed upon him to convey said real estate to them.

It further alleges that, by reason of said conspiracy, August Anderson was wholly destitute and died insolvent; that the respondent is unable to pay decedent's creditors or the expense of his last sickness and burial, and that there are no assets out of which to pay the bequests under the will; that the deed and transactions in reference thereto were a fraud upon the grantor as well as his rightful heirs and the persons named as legatees in the will, and upon the federal and state inheritance tax divisions.

We have searched the record and find no evidence of any kind to sustain the allegations of conspiracy. It does not disclose any evidence of a meeting of the minds by the persons named in the complaint to accomplish a common

purpose. The deed involved in this action was dated March 15, 1947; seven others, copies of which are exhibits here, are dated in December, 1947. August Anderson took them to the bank, executed and acknowledged them on February 26, 1948. The fact that he executed them all at one time is not in itself sufficient evidence of conspiracy among the grantees. So far as the appellant Sydney B. Hovde is concerned, he was out of the state and a student at Michigan State College when the deed was drawn and when it was executed.

"Although, of necessity, a finding of conspiracy may be inferred from established facts and circumstances, there must be some basis on which a finding of the conspiracy may rest. There must be more than a mere suspicion or conjecture. *Boyce v. Independent Cleaners, Inc.* (1932), 206 Wis. 521, 240 N. W. 132." *Scheit v. Duffy* (1946), 248 Wis. 174, 176, 21 N. W. (2d) 257.

Neither do we find any evidence of undue influence. According to the testimony of Selma Anderson, sister of the grantor, the parents of Sydney Hovde had told August Anderson on several occasions early in 1948 that he should make deeds because "they couldn't break them." The only construction that can be placed on these conversations is that they were advising a method of distribution of Anderson's property.

Respondent has failed to prove that August Anderson was a person unquestionably subject to undue influence. No witness testified to mental incompetence, although the decedent was eighty-six years old when he died. The record discloses testimony that he was "quite independent and somewhat hard to convince," that he was competent to make a will on March 20, 1947 (the deed here was drawn on March 15, 1947), that he was "normal and competent" in June and July of 1948, that he was "a pretty shrewd business man" in the spring of 1948, and that "he knew what he

was talking about" in January of 1949, the month before he died. So far as his physical condition is concerned, although some witnesses testified that August Anderson had "failed," was "feeble" and "in poor health," there is also testimony to the effect that "he was up and around and had his meals at the table regularly," that he "cleaned up the yard and cut down trees to pass the time," that when one of the witnesses visited him he was pulling nails out of lumber.

August Anderson kept the deed in his possession eleven months, from March 15, 1947, to February 26, 1948, before he executed it, and it was not until sometime in September, 1948, after an interval of another seven months, that he delivered it to the appellant Sydney Hovde. Under these circumstances, it does not appear that any alleged influence exercised to accomplish the making of the deed robbed the grantor of the right to exercise his own judgment in regard thereto.

It might be argued that there is evidence of undue influence in the fact that the disposition of grantor's property by the deeds is different from the disposition provided for in his various wills, particularly the last will. However, this court has said in *Deck v. Deck* (1900), 106 Wis. 470, 472, 82 N. W. 293:

"This court held, many years ago, that 'motives of natural affection and gratitude on the part of the testator, and solicitations or arguments which appeal to such motives, do not constitute undue influence.' *In re Jackman's Will,* 26 Wis. 104. In that case it was further held that: 'Undue influence in such a case is such an influence that the instrument is not properly an expression of the will of the testator in regard to the disposition of his property, but rather an expression of the will of another person.' To the same effect are *Layman v. Conrey,* 60 Md. 286; *Matter of Mabie,* 5 Misc. (N. Y.), 185; *Stulz v. Schoeffle,* 18 Eng. Law & Eq. 576. In this last case the testator, whose capacity was weakened to a certain extent by disease, was induced by the

influence of his wife to alter his previous will, so as to be more favorable to her; but it was held that such influence was not undue, and further held that 'importunity, to have legal effect, must be in such a degree as to take away free agency from the testator.' In the case at bar the wife's influence, if exerted at all, was in favor of certain of her children, and in a way, apparently, to meet the approbation of the testator. Their reasons for making the will as they did were best known to themselves."

And in *Cutler v. Cutler* (1899), 103 Wis. 258, 264, 79 N. W. 240:

"The only object in making a will is to make a different disposition of property than that provided by statute. The right to dispose of property by will includes the right to disinherit brothers and sisters and nephews and nieces. The testator was not obliged to give any reason or explanation why he favored one relative over the others. If the will is the result of his free and voluntary act, then no relative has any legal ground for complaint." See also *Drinkwine v. Gruelle* (1904), 120 Wis. 628, 98 N. W. 534.

Respondent calls attention to a statement of the deceased in September of 1948 that "these people are taking me to the poor farm" in support of his allegation of undue influence. No indication was made as to who was meant by "these people." The record contains a list of several outlawed notes and mortgages upon which neither principal nor interest had been paid. It would be just as reasonable to infer that those debtors of decedent were the people who were sending him to the poor farm as to speculate that he meant the nieces and nephews who were grantees of the deeds he executed.

Fraud and undue influence must be proved by clear and satisfactory evidence, not by a mere preponderance. The burden of proof is "upon one charging undue influence, from first to last, to establish it by clear and satisfactory evidence." *Will of Ball* (1913), 153 Wis. 27, 37, 141 N. W. 8. Likewise, in an action to set aside a deed on the ground of undue

influence, it has been held in numerous cases that the burden is upon the person charging such undue influence to establish it by clear, satisfactory, and convincing evidence. *Hass v. Hass* (1946), 248 Wis. 212, 21 N. W. (2d) 398, 22 N. W. (2d) 151; *Will of Faulks* (1945), 246 Wis. 319, 17 N. W. (2d) 423; *Will of Puls* (1945), 246 Wis. 660, 18 N. W. (2d) 321.

There is no evidence to sustain the allegations that August Anderson died insolvent and that there are not funds with which to pay creditors. On the contrary, the record shows an accumulation of $10,000 in the estate, and claims filed amount to some $7,000, of which one claim for $4,500 plus interest admittedly should be $3,200 plus interest. Whether there are assets sufficient to pay bequests to beneficiaries under the will is immaterial, since there is nothing in the record to show that the grantor was not fully aware of the effect of his acts.

We do not find it necessary to discuss the errors in instructions and rulings on evidence which are assigned by appellants since in our view of the case the evidence does not in any way meet the requirements of clear, satisfactory, and convincing proof necessary to set aside the deed, and we are assuming the jury verdict was merely advisory. There is not in the entire record even a preponderance of the evidence to show undue influence or fraud as alleged in the complaint.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.

CURRIE, J. (*dissenting*). Counsel for the respondent special administrator state in their brief that it is their contention that the main issue on this appeal is not the conspiracy, but whether or not any person or persons used undue influence for the purpose of effecting the plan whereby August Anderson was induced to execute the nine deeds under date of February 26, 1948, by which he conveyed away all the

real estate owned by him. It seems to me that this is the real issue, and it is my conclusion that there is sufficient evidence of undue influence to sustain the judgment of the trial court setting aside the deed to the defendants Sydney B. Hovde and wife.

The cause of action was one in equity, triable to the court, and the verdict of the jury was merely advisory.

At the time of the execution of the nine deeds, August Anderson was a bachelor and eighty-five years of age. For many years he had resided on a farm in St. Croix county with his brother, John (also a bachelor), and his sister, Selma. John died in 1943, and August and Selma continued living together. Shortly after John died, Ben Hovde (father of the defendant Sydney Hovde), and his son, Milton, came to live with August and Selma, and rented the home farm and some adjoining land from August, some of the lands being rented on a crop-share basis and some of it on a cash rental. Mrs. Ben (Nellie) Hovde, mother of the defendant Sydney Hovde, was a niece of August and Selma, being a daughter of Annie Gilstad, deceased sister of August and Selma. Mr. and Mrs. Ben Hovde resided in River Falls, and Mrs. Hovde maintained her home there while her husband and son, Milton, were renting said lands from August and living in the August farm home, but would frequently make trips over to the farm to visit them. Milton went to the August Anderson home in the spring of 1944 and stayed there until August died on February 10, 1949, except while in military service during the period of October, 1944, to April, 1946; and his father, Ben Hovde, was there during the entire period from 1944 to 1949.

Before August executed the nine deeds on February 26, 1948, conveying away all of his real estate, he owned substantial real-estate holdings which, together with some personal property, aggregated in value from $35,000 to $40,000

but by far the major portion of the value of his estate was the real estate.

At the time of making the three wills hereinafter mentioned, and at the time of his death, his heirs at law consisted of his sister, Selma, his sister, Hannah Londahl, ten nephews and nieces being children of his deceased sister, Annie Gilstad, of whom Nellie Hovde was one, and nine nephews and nieces who were the children of Julia Olson Lofgren, another deceased sister.

After the death of his brother, John, August executed three wills dated, respectively, October 23, 1944, November 3, 1944, and March 20, 1947, the first two of which were drafted by Attorney Harold D. Olson of Baldwin, and the last of which was drafted by Attorney James E. Hughes of New Richmond.

By the October 23, 1944, will, a few small money bequests were bequeathed, that to the grandnephew Sydney Hovde being $100. Then the residue of the estate was bequeathed in three equal shares, one to his sister Selma, one to the ten nephews and nieces who were the children of his deceased sister Annie, and the third share to nephews and nieces who were children of his deceased sister Julia. The provisions of the November 3, 1944, will were almost identical with those of the October 23, 1944, will, the purpose of executing such second will apparently being to correct the stated relationship to testator of a Mrs. Vina Hanson, a niece, who was bequeathed $500 under both wills.

By the third will executed March 20, 1947, the testator bequeathed $1 each to the nephews and nieces who were children of the deceased sister Julia, and the residue was divided into two equal shares, one of which was bequeathed and devised to his sister Selma, and the other to the ten nephews and nieces who were children of his deceased sister Annie. The small money bequests were the same, or prac-

tically the same, as in the first two wills, and under all three wills the defendant Sydney Hovde was bequeathed only $100, but his mother, Nellie Hovde, shared in the residue under all three wills as one of the ten nephews and nieces who were children of the testator's deceased sister Annie.

In the case of *Will of Ehlke* (1943), 244 Wis. 115, 121, 11 N. W. (2d) 497, this court declared:

"To make out a case of undue influence there must be shown (a) opportunity to exercise influence; (b) disposition to exercise influence; (c) susceptibility of the subject to influence by the person having the opportunity; and (d) a result indicating the exercise of undue influence by such person."

Such four elements required to make out a case of undue influence have been enumerated many times in earlier decisions of this court, see 16 Callaghan's Wis. Dig., Undue Influence, p. 804, sec. 1.

It is not necessary in order to upset a will or deed, on the ground that it was obtained by undue influence, to prove that the person who benefited by such will or deed exercised the undue influence but it is sufficient that such undue influence was exercised by some third person independently of any connivance with the immediate beneficiary. In the case of *Addis v. Grange* (1934), 358 Ill. 127, 133, 192 N. E. 774, 96 A. L. R. 607, the plaintiff sought cancellation of a deed executed by a Mrs. Addis to her daughter, Mrs. Grange, on the ground that it had been obtained through undue influence, and the testimony disclosed that such influence had been exerted by a banker and not by Mrs. Grange. The court in its decision said:

"It is immaterial whether Mrs. Grange exercised any undue influence over her mother or not. A court of equity will look to the circumstances and not to the form of the transaction. It is of no consequence by whom the undue

influence was exercised—whether by a beneficiary or an outsider."

In an annotation appearing in 96 A. L. R. 613, entitled "Undue influence by third person in which immediate beneficiary did not participate," the author of the annotation states:

"Therefore a gift, grant, or bequest procured by undue influence is vitiated thereby, and it is immaterial that in the procurement thereof the immediate beneficiary did not participate."

The foregoing authorities are cited because in the instant case there is no testimony that the defendant Sydney Hovde or his wife attempted to influence the grantor, August Anderson, but there is testimony that his father, Ben Hovde, and his mother, Nellie Hovde, did do so.

Let us now consider the testimony and evidence which tends to establish the four essential elements necessary to upset the deed to the defendants on the ground of undue influence.

As to the opportunity to exercise undue influence, the testimony is undisputed that for approximately five years Ben Hovde lived in the same household with August Anderson, and that Nellie Hovde frequently was in the Anderson home when she came to visit her husband and her son, Milton. Ben Hovde transacted banking business and other business for August Anderson and a fiduciary relationship existed between them. Ben Hovde accompanied August Anderson to the bank at New Richmond when the nine deeds, including the deed to the defendants that was executed by the grantor on February 26, 1948, and was present when such deeds were so executed.

The disposition on the part of Ben Hovde and Nellie Hovde to exercise influence over the grantor is clearly. established by the testimony of Selma Anderson, who was fifteen years younger than her brother August. Selma testified that

about a year prior to August's death she overheard in the front room of the Anderson farm home a conversation at which her brother August, Ben Hovde, and Nellie Hovde were present. The following questions were asked Selma and the following answers were given by her with respect to this:

"*Q.* What was that conversation? What did you hear? *A.* They said that if they make deeds they couldn't break them.

"*Q.* Who said that? *A.* Nellie said that. She was after him for that.

"*Q.* To whom was she talking at that time? *A.* She was talking with August. . . ."

"*Q.* Did you overhear a conversation at any other time relative to this suggestion? *A.* Well, yes, I heard that quite a few times. They wanted him to make deeds."

Selma also testified, referring to Ben and Nellie Hovde, "They urged him to make deeds and he got mad and went in the front room and he said 'I am not making deeds,' he says." She also later on in her testimony testified that she heard the Hovdes urge her brother August to make deeds to his property "quite a few times." Neither Ben Hovde nor Nellie Hovde took the witness stand to deny this testimony of Selma, and it stands uncontradicted in the record and clearly establishes a disposition on the part of Ben and Nellie Hovde to influence August Anderson to make the deeds conveying away his real estate.

As to the third element of a result indicating the exercise of undue influence, we have a situation where the testator had on March 20, 1947, only eleven months prior to the execution to the deeds in question, made a will under which the disposition of his estate was very much different from that which resulted from the execution of the nine deeds. The plan of disposition of estate set forth in the 1947 will was the same as that evidenced in the two prior wills executed in the fall of 1944, with the exception that the 1947

will bequeathed only $1 each to the nephews and nieces who were children of testator's deceased sister Julia, while in the two earlier wills such nephews and nieces shared in the residue. However, in all three wills the sister Selma was bequeathed $1,000 in money and shared substantially in the residue, the 1947 will increasing her share in the residue from one third to one half. These three wills were drafted by careful and reputable attorneys.

As a result of the nine deeds, the defendant Sydney Hovde, a grandnephew of August Anderson, and Sydney's wife received title to one hundred twenty acres of land, being the home farm on which the grantor resided, while under all three wills Sydney was bequeathed only $100. Counsel for defendants contend that the reason for such favorable treatment of Sydney was because in years gone by he had spent summer vacations on the Anderson farm with his granduncle and was a favorite of August Anderson, but such spending of summer vacations had taken place prior to the making of the March 20, 1947, will. The record is entirely barren of any explanation of why August Anderson should have changed the disposition he had intended for Sydney in his will made in 1947 whereby he bequeathed him $100, and the disposition effected by the deed to Sydney and his wife of the home farm, a valuable farm property worth several thousand dollars. *Nothing had occurred in the eleven-month period between the making of the will and execution of the deed which would afford any explanation for so doing.*

Likewise Carlyle Hovde, brother of Sydney Hovde, received one of the nine deeds whereby one hundred twenty acres of land were conveyed by August Anderson to him while Carlyle had been bequeathed only $100 in all three wills. Joan and Genevieve Hovde, sisters of Sydney, also received a deed to one hundred twenty acres while under the three wills each of them had been bequeathed but $100.

Defendants argue that Selma Anderson had property of her own and did not need to inherit property from her brother August. However, such fact was true at the time of making each of the three wills and yet August had seen fit to substantially provide for Selma in all those wills as above pointed out.

In the case of *Will of Stanley* (1937), 226 Wis. 354, 359, 276 N. W. 353, testatrix at the time of her death on November 27, 1936, was eighty-eight years of age. She had two sons, Guy and Frank. Frank was divorced and his son, Henry, had lived with his grandmother, the testatrix, as a child until he finished eighth grade. Under a will dated July 19, 1929, and the codicil thereto dated November 21, 1931, testatrix bequeathed and devised two thirds of her property *in trust* to her son, Guy, who was addicted to the use of intoxicating liquor, and one third to the grandson, Henry Stanley. On August 7, 1936, she made a further will under which all of her estate was left *outright, and not in trust,* to Guy, except for two bonds worth $200 which were bequeathed to Henry. Henry objected to the probate of this latter will on the ground that it had been obtained under undue influence. This court, speaking through Mr. Justice WICKHEM, in its opinion in discussing proof of the element of undue influence having to do with the result obtained, stated:

"The result clearly appears to have been the effect of undue influence. It was well established that testatrix was extremely fond of Guy Stanley, but it is equally clear that she knew of his unfortunate habits; that she entertained a great repugnance to these habits; and that her misgivings as to his ability prudently to handle his share had led to a carefully developed plan leaving the major part of her estate to him, but leaving it in trust so that he could not squander it. It is equally evident that she held contestant in high esteem and entertained for him a very great affection, and that this persisted until the end of her life. It is suggested that she

changed her will because of her belief that through her assist-
ance Henry Stanley was better equipped to make a living
and that Guy had not had such advantages. This leaves
wholly unexplained the fact that for some six or seven years
she had done nothing for Henry and yet had not changed
her will. *More important, however, is its complete failure
to account for the sudden determination to leave Guy's share
unincumbered by a trust. We must consider that these
changes were not accounted for satisfactorily by any explana-
tion offered at the trial."* (Emphasis ours.)

We now come to the fourth element necessary to establish
that the deed to the defendants was obtained under undue
influence, such being the susceptibility of August Anderson
to influence by a person or persons having the opportunity to
exercise such influence.

This court has repeatedly held that where three of the
four elements required to show undue influence are clearly
established only slight additional evidence as to the fourth
element is necessary to compel the inference of its existence.
*Will of Ehlke, supra; Will of Stanley, supra; Will of Lee*
(1946), 249 Wis. 59, 23 N. W. (2d) 405; *Will of Link*
(1930), 202 Wis. 1, 231 N. W. 177.

There is no evidence that August Anderson was mentally
incompetent prior to his death, but on the contrary was able
to transact business during the last year of his life, and dur-
ing his lifetime he had the reputation of being a bright and
intelligent man. At the time of executing the nine deeds he
was eighty-five years of age. Nellie Olson, who had known
him well since 1920, testified that for the last two years of
his life he was run down in health and rapidly declining,
and was getting weaker in his mind and body, and that he
was "a little dazed" when she talked to him, but that she
thought he was a pretty shrewd businessman. Henry Gluege,
who had leased a farm from August Anderson for seven or
eight years prior to 1948, stated that in September, 1948,
he was kind of dazed and in poor health, and sometimes "he

would talk real good, and then he was kind of dazed like. He was played out." The sister, Selma Anderson, testified that in January, 1948, August's health was not good.

The strongest evidence that he was susceptible to influence by Ben Hovde and Nellie Hovde, parents of the defendant Sydney Hovde, is the testimony of Selma that August became angry when the Hovdes pressed him to make deeds and said, "I am not making deeds," and yet within a short time thereafter he did go to the bank at New Richmond, accompanied by Ben Hovde, and executed the nine deeds. One Joseph Anderson, a second cousin of August Anderson, testified that he had a conversation with August in September, 1948, and that August seemed very disappointed, and said, "These people are taking me to the poor farm." While he did not identify whom he referred to by "these people," the inference is that he was referring to the Hovdes, and that he had parted with his property against his will. He apparently did not realize he had deeded the home farm to the defendants because in December, 1948, he renewed the fire insurance policy on the buildings on the home farm.

In *Will of Bocker* (1918), 167 Wis. 100, 103, 166 N. W. 660, the trial court specifically found with respect to the testatrix who was eighty-nine years of age when she executed the will which was under attack as having been made as a result of undue influence on the part of an adopted daughter, as follows:

" 'The deceased was obviously a strong-minded and strong-willed woman and she retained her faculties unimpaired to the last, except as to hearing, and there was no change in that respect for a long period prior to her death.' "

It was the conclusion of the trial court in *Will of Bocker, supra,* that the three elements of opportunity to exert influence, the disposition to exert such influence, and a result indicating the exercise of undue influence, were present; but

that there was failure to prove susceptibility to undue influence. However, this court pointed out that no satisfactory explanation had been given as to why testatrix should have made one will leaving part of her property to her adopted daughter, and part to other relatives, and then a little more than a month later had made another will leaving practically the entire estate to the adopted daughter, and that a presumption arose in the absence of such explanation that this change must have been the result of undue influence. In addition to this the court also pointed out that the fear of having to spend her last days in a dreaded hospital instead of her home if she failed to yield to the importunities of her adopted daughter, may have also broken down her will to resist.

In the instant case the opportunity to exercise undue influence, the disposition on the part of Ben Hovde and Nellie Hovde to influence the grantor to execute deeds conveying away his real estate, and a result indicating that the execution of such deeds was the result of such influence because of the entirely different disposition which resulted therefrom than was made by the three prior wills, the last of which had been executed only eleven months before, are all clearly established. Therefore, but slight additional evidence was required to establish the fourth element of susceptibility to influence, and as pointed out above, there was evidence which the trial court had the right to conclude did establish the fourth element of susceptibility.

I would therefore affirm the judgment.

I am authorized to state that Mr. Chief Justice FRITZ and Mr. Justice FAIRCHILD join in this dissent.