WILL OF MCLEISH : MACLEISH, Appellant, vs. FULMER and others, Respondents.

*October 12—November 9, 1932.*

418

For the appellant there was a brief by *Bradford, Bradford & Derber* of Appleton, attorneys, and *Edward J. Dempsey* of Oshkosh of counsel, and oral argument by *Mr. Dempsey*.

For the respondents there was a brief by *Benton, Bosser & Tuttrup* of Appleton, and oral argument by *Roger R. Tuttrup*.

OWEN, J. The testatrix, Laura A. McLeish, was the second wife of one William McLeish, to whom she was married in 1881, and resided in the city of Appleton for many years prior to her death, which occurred on the 18th day of January, 1930. At the time of her marriage to William McLeish she had a personal estate of from five to eight thousand dollars. William McLeish had four children by a prior marriage. Laura McLeish had no children at the time of her marriage, and no children were born as a result of her marriage to William McLeish.

On the 20th day of June, 1915; William McLeish and Laura A. McLeish executed last wills and testaments by which each disposed of their respective properties. These wills were not joint wills, nor were they reciprocal wills, but, apparently, the provisions of each will met with the approval of the other spouse. William McLeish devised and bequeathed all of his estate to his wife Laura A. McLeish. In case she predeceased him, he devised and bequeathed an undivided one-half of his estate to his daughter, Idabelle Ragland, and the remainder of his estate to his three sons in equal shares. Laura McLeish devised and bequeathed all of her estate to William McLeish, to have and to hold for and during his lifetime. In case he predeceased her, however, she bequeathed to certain of her relatives $4,800, and the remainder of her estate she devised and bequeathed to the children of her husband, in the same proportion that the

estate of her husband was devised in case she predeceased him.

William McLeish predeceased his wife Laura, and after his decease she continued to live at Appleton. The children of her deceased husband lived in Montana, or other parts of the West. Subsequent to the death of her husband she enjoyed neither their companionship, society, or assistance. It also appears that after her marriage to William McLeish his children did not reside at home, and there is reason to believe that she never enjoyed the opportunity of becoming intimate with them. After her husband's death she lived alone at Appleton until April 15, 1926, when she procured her niece, Emma Fairbanks Fulmer, to come from the East to live with her. At or about the time of the coming of Mrs. Fulmer, Mrs. McLeish deeded to her the homestead in which she was living, valued at about $8,000.

In August, 1926, Arthur A. MacLeish, a son of William and a stepson of Laura, living at Fort Benton, Montana, called upon her and invited her to accompany him to his home at Fort Benton. Mrs. Fulmer advised her to go with him. She did so. Before leaving, however, she executed to Arthur A. MacLeish a power of attorney, pursuant to which he went to her safety box, took charge of her papers and securities found therein, and took them to Fort Benton. While at Fort Benton, and on the 24th day of March, 1927, Laura McLeish executed a second will, in which she devised and bequeathed all of her estate to the children of her husband in equal shares.

Upon the death of Laura McLeish, Mrs. Fulmer propounded the 1915 will for probate, to which objections were filed by Arthur A. MacLeish. Arthur filed for probate the will executed by her in 1927 at Fort Benton, to which Mrs. Fulmer, and others, objected on the ground that at the time of the execution of the 1927 will she did not have testamen-

tary capacity to make a will, and on the further ground that such will was induced by fraud and undue influence.

It appears that at the time of her death Mrs. McLeish was eighty-three years of age. There is much evidence from neighbors and acquaintances of hers at Appleton to the effect that she was in failing mentality for a number of years prior to her death and to indicate progressive senility. The mere fact, however, that she did not possess at the time of her death her erstwhile mental strength and powers is no indication that she was incompetent to make the will of March 24, 1927. The test of testamentary competency is not "whether the testator did the best or the wisest or the theoretically just thing in his will; but, Did he have sufficient active memory to collect in his mind and comprehend, without prompting, the condition of his property, his relations to his children and other persons who might properly be his beneficiaries, and the scope and bearing of his will, and to hold these things in his mind a sufficient length of time to perceive their obvious relations to each other, and be able to form some rational judgment in relation to them?" *Will of Butler,* 110 Wis. 70, 78, 85 N. W. 678. While the evidence of the Appleton witnesses leaves no doubt of her fading mentality, and, in the absence of any other testimony in the case, might justify the conclusion that it was not sufficient in 1927 to meet the test of the degree of mental competency required to enable her to make a will, there is other evidence in the case which must not only be balanced against such evidence, but which in our judgment completely overcomes it.

In the first place, we have the evidence of the scrivener who drew the will, the attesting witnesses to the will, and other witnesses at Fort Benton. F. E. Stranahan was the attorney who prepared the will. At the time he testified he was judge of the district court of the Twelfth judicial district in the state of Montana. He testified that at the time of the execution of the will Laura McLeish was of sound mind and

disposing memory, and that she appeared to know about her property and her relationship to the legatees mentioned in the will. To the same effect was the testimony of all the other witnesses from Fort Benton. Their testimony, however, was given upon written interrogatories and, consequently, was not as impressive as the testimony given by the witnesses appearing in open court.

However, it is not alone the testimony of these witnesses that compellingly indicates the state of mind of the testatrix during her stay at Fort Benton. While she was at Fort Benton she maintained a correspondence with Mrs. Idabelle Green, who lived at Wausau. Mrs. Green was the daughter of Mrs. Ragland, a daughter of William McLeish. These letters leave no doubt concerning the testatrix's understanding of those comprising her husband's family. She writes rather breezily concerning all her husband's children and the members of their families, and tells of their hopes and expectations. The letters are not brilliant literary productions. There are some repetitions in them, but, on the whole, they are written in a style which might be expected from one of ordinary education at the advanced age of eighty-three years. They bespeak a lively and friendly interest in all of her husband's progeny, and indicate a complete understanding of her relations to and with them.

The burden to show incompetency rests upon the one contesting the will to establish it by proof that is clear, convincing, and satisfactory. *Will of Grosse,* 208 Wis. 473, 243 N. W. 465, and cases there cited. There is really no evidence in the case that testatrix did not possess the necessary mental qualifications to make a will. The evidence does little more than show a fading mentality. It is true that after she returned from Montana, and before the time of her death, a guardian of her property was appointed. Such fact, however, is not at all conclusive upon her mental incapacity to make a will in March of that year. She might not have had the

capacity to manage her business affairs with the necessary prudence and yet she could have had sufficient active memory "to collect in her mind and comprehend, without prompting, the condition of her property, her relations to her children and other persons who might properly be her beneficiaries, and the scope and bearing of her will, and to hold these things in her mind a sufficient length of time to perceive their obvious relations to each other, and be able to form some rational judgment in relation to them." We therefore conclude that the finding of the court of her mental incapacity to make a will is not sustained by the evidence.

We now proceed to consider whether the evidence shows an exertion of undue influence on the part of Arthur A. MacLeish to induce her to make the will of March, 1927. It is familiar that in order to impeach the will on the ground that its execution was produced by undue influence, it is necessary to show by clear; convincing, and satisfactory evidence that there was a disposition on the part of Arthur to exercise undue influence, that there was a susceptibility on the part of the testatrix to undue influence, that there was an opportunity to exercise undue influence, and that undue influence had been exercised. That there was an opportunity to exercise undue influence while she was a guest at his home in Fort Benton may be conceded, but the record is devoid of any evidence of a disposition on the part of Arthur to exercise undue influence, and we do not consider that the will of March, 1927, was a result indicating that undue influence had been exercised.

The will was quite natural. It will be noted that by her first will she left only $4,800 to her own relatives. However, prior to the execution of her 1927 will she had deeded to her niece the Appleton homestead, valued at $8,000. When she came to execute the 1927 will, therefore, she realized that she had conveyed to her own relatives more than she had given them by the 1915 will. The only difference between

the two wills is that she disinherited her own relatives, but this was not an unnatural thing to do in view of the fact that subsequent to the execution of the 1915 will she had given to her niece more than she had left to all her relatives by the 1915 will. The 1927 will makes just another change in the disposition of her property from that contained in the 1915 will. The 1915 will left one-half of her estate to Ida Ragland, the daughter of William McLeish. The 1927 will leaves the estate in equal shares to the daughter and the three sons of William McLeish. No reason is suggested for this change, but, presumably, the reasons were sufficient to the testatrix, and it is to be noted that Ida Ragland is not objecting to the 1927 will.

The only circumstance in the case that indicates a possible disposition on the part of Arthur to exercise undue influence is that when he visited Mrs. McLeish and invited her to go with him to his home at Fort Benton, he secured a power of attorney from her which enabled him to take charge of her properties and securities. However, there is no direct testimony that he did exercise undue influence, or that it was even his own suggestion. It was not at all strange if, under all the circumstances, Mrs. McLeish should commission Arthur to gather up her papers and take them with them to Fort Benton. To hold the circumstances of this case sufficient to justify a finding of undue influence would be to renounce the rule that undue influence must be established by clear, convincing, and satisfactory evidence.

*By the Court.*—Judgment reversed, and cause remanded with instructions to admit the will to probate.