## Will of Stanley: Stanley, Appellant, vs. Stanley, Respondent.

*November 11—December 7, 1937.*

For the appellant there was a brief by *Rogers & Owens* of Portage, and oral argument by *H. B. Rogers*.

For the respondent there was a brief by *Henry A. Gunderson* of Portage, attorney, and *Lucius A. Squire* and *M. M. Morrissey*, both of Madison, of counsel, and oral argument by *Mr. Morrissey* and *Mr. Squire*.

WICKHEM, J. The sole question is whether the finding of the trial court was against the great weight and clear preponderance of the evidence. This requires a review of the facts in some detail. At the time of her death testatrix was over eighty-eight years of age, and had spent her life in the village of Wyocena. She had two sons, Guy, proponent of the will of August 7, 1936, and Frank, father of contestant. Frank and his wife were divorced when the contestant was a child, and contestant lived with his grandmother until he finished eighth grade. His grandmother supported and assisted him during that period, with some assistance from his mother. On July 19, 1929, testatrix made a will by which she left one half of her estate in trust for her son Guy, the

proponent, and one half to Henry, with remainder to Henry. On November 21, 1931, she executed a codicil leaving two thirds of the property in trust for Guy and one third to Henry with remainder to Henry. On January 20, 1934, she made a codicil which changed the executor but was otherwise identical with the first codicil. In April, 1936, a new will was made by which the real estate was left to Guy, $10 to Henry, and the residue to Guy. The will of August 7, 1936, leaves the real estate and eight of her bonds to Guy, and bequeaths two bonds to Henry. The effect was to increase Henry's bequest to about $200. Thus, while the first will as modified by later codicils leaves two thirds of her estate in trust for Guy's benefit during his lifetime with remainder to Henry, the last two wills give virtually all the estate to. Guy absolutely and without restraint in the form of a trust. It is claimed by contestant, and the evidence shows, that Guy was addicted to the use of alcoholic liquors; that his drinking was continuous and to excess and that his habit in this respect persisted up to the testatrix's death; that in view of his weakness he was incapable of handling or properly expending money; that the testatrix had a violent prejudice to the use of alcoholics, and that she knew of Guy's habits in this respect; that up to the time of the last two wills she had evidenced a clear determination to put Guy's share of her estate in such a form as to prevent him from squandering it. It is the contention of contestant that the evidence clearly shows that testatrix deviated from this firmly fixed purpose only by reason of undue influence exercised upon her by Guy and by a Miss Gove, a practical nurse secured by Guy about June 11, 1935, to look after his mother because of her increasing feebleness.

With respect to the charge of undue influence, it has been held necessary that four elements be proved in order to establish the fact of undue influence:

"(1) A person unquestionably subject to undue influence; (2) opportunity to exercise such influence and effect the

wrongful purpose; (3) a disposition to influence unduly for the purpose of procuring an improper favor; and (4) a result clearly appearing to be the effect of the supposed influence. *Will of Schaefer,* 207 Wis. 404, 411, 241 N. W. 382; *Will of Grosse,* 208 Wis. 473, 477, 243 N. W. 465; *Will of McLeish,* 209 Wis. 417, 422, 245 N. W. 197." *Will of Leisch,* 221 Wis. 641, 648, 267 N. W. 268.

It has also been held that where three of the elements are established by clear and satisfactory evidence, slight additional evidence as to the fourth may compel the inference of its existence. *Will of Link,* 202 Wis. 1, 231 N. W. 177, citing *Elliott v. Fisk,* 162 Wis. 249, 155 N. W. 110; *Will of Walker,* 193 Wis. 264, 213 N. W. 626. With respect to the opportunity to exercise undue influence there can be little question. During the months preceding and following the will, Mrs. Stanley was under the care of the proponent, Guy Stanley, and the nurse, Miss Gove. During all this period she was feeble and compelled entirely to rely for her physical needs upon these two persons, and they had access to her and full opportunity to exercise whatever influence they may have desired.

A number of circumstances point to the disposition upon the part of Guy Stanley and Miss Gove to exercise undue influence upon the testatrix. Some two weeks before her death, Ella Stanley, mother of contestant, proposed to take testatrix to Madison to live with her because of her claim that she could give testatrix better care. Testatrix in the fall of 1936 had sustained injuries as a result of two accidental falls and was by this time definitely disabled. There is uncontradicted evidence by the attending physician that Mrs. Stanley requested him to have proponent and Miss Gove leave the room so she could talk to him concerning the advisability of going to Madison, and that when they left the room, she said she wanted to go. One Alice Purvis, a niece of decedent, visited her just before the Madison trip, and

claims that Mrs. Stanley tried to whisper to her that she was going to Madison, but "I don't want them to know it." She testifies that Guy Stanley overheard this, and that he and the nurse came running and that he berated her for interfering. While Guy denied on the stand that he had forbidden her to come to the house, he admitted on adverse examination that he had done so, and there is in evidence a letter to Mrs. Purvis by Guy which confirms the testimony of Mrs. Purvis that the altercation had taken place. The letter is full of statements to the effect that Guy is the boss, and that he will tolerate no interference from anybody with respect to his mother. The foregoing indicates quite plainly Guy's purpose to prevent his mother from going to Madison to visit the family of contestant even though her wish was to do so. With this background, reference may be made to several other circumstances.

It appears that in November, 1934, testatrix deeded a portion of her real estate to Guy, and that shortly after executing the will which was admitted to probate, she gave him a bill of sale of all the personal property in the house. Guy paid nothing in either instance. These instruments were drafted by the draftsman of the will of April, 1936. The will of August 7, 1936, was drafted by Miss Gove, who copied the earlier will and inserted the desired changes. All of the persons who were active in connection with the two last wills and the deed and bill of sale were, generally speaking, the same persons. Such outsiders as were necessarily involved were called in either by Guy or by Miss Gove. As soon as the will of April, 1936, was executed, it was immediately taken to Portage and deposited in court. Testatrix died on November 27th, and the petition for probate of the last will was presented on December 1st. The cumulative effect of the foregoing is to establish by the great weight and clear preponderance of the evidence that there was a disposition

on the part of Guy Stanley and Miss Gove to exercise undue influence. In connection with this, it may be added that the record clearly shows that Miss Gove was a strong partisan of proponent, and that in advance of the contest she offered to give him such help as she could in this case.

The result clearly appears to have been the effect of undue influence. It was well established that testatrix was extremely fond of Guy Stanley, but it is equally clear that she knew of his unfortunate habits; that she entertained a great repugnance to these habits; and that her misgivings as to his ability prudently to handle his share had led to a carefully developed plan leaving the major part of her estate to him, but leaving it in trust so that he could not squander it. It is equally evident that she held contestant in high esteem and entertained for him a very great affection, and that this persisted until the end of her life. It is suggested that she changed her will because of her belief that through her assistance Henry Stanley was better equipped to make a living and that Guy had not had such advantages. This leaves wholly unexplained the fact that for some six or seven years she had done nothing for Henry and yet had not changed her will. More important, however, is its complete failure to account for the sudden determination to leave Guy's share unincumbered by a trust. We must consider that these changes were not accounted for satisfactorily by any explanation offered at the trial. What was said in the case of *Will of Bocker,* 167 Wis. 100, 106, 166 N. W. 660, applies:

"We feel that the logic of the situation made it incumbent upon a proponent of a will, situated towards the maker of it as Selma was towards Mrs. Bocker, to meet and overcome the natural and irresistible presumption that arose from this unexplained change in the two documents, when there was such clear proof of the disposition to exercise undue influence, such abundant opportunity to exercise it, and where a so ardently desired result is so plainly manifest."

See also on this point *Will of Link,* 202 Wis. 1, 231 N. W. 177; *Will of Leisch, supra.*

Under all the circumstances it must be held that, while Guy was a natural object of her bounty, the sudden and complete departure from her well-considered and long-entertained plan of disposition was a result clearly appearing to be the effect of undue influence.

Holding as we do that where three of the four elements are satisfactorily established by the contestant, there remains only to consider whether there was some evidence of testatrix's susceptibility to undue influence. In connection with this, it may be pointed out that testatrix was nearly eighty-nine years of age, in feeble health, utterly dependent on Guy Stanley and Miss Gove for her physical wants, and while still competent, was failing both physically and mentally. While there is evidence that she had always been a woman of strong character and firm resolution, the evidence of the doctor that she desired Guy Stanley and Miss Gove to leave the room so she could talk with him as to the advisability of her going to Madison, and her anxiety expressed to Mrs. Purvis lest Guy and the nurse hear of this intention, evidence her own feeling that she could not resist their opposition. It is stated by the trial court that this evidence is of little consequence in view of the fact that she did go to Madison over the objection of proponent and the nurse, but it must be remembered in this connection that she had the advice of the doctor and such moral support as contestant's mother could give by her presence at that time. While the evidence of her susceptibility to undue influence, if considered wholly apart from the other circumstances of the case, is in such state that we might have to accept the finding of the trial court, it is sufficient to satisfy the rule that where the other three elements of undue influence are satisfactorily proven, very little evidence of the fourth element is required. It follows that the trial court erroneously admitted to probate testatrix's will of August 7, 1936. While the will of April, 1936, was not

offered for probate, it is manifest that its execution was effected by the same influence that procured the later will. It follows that no will superseding that of July 19, 1929, and its codicils, has been offered for probate, and the court was in error in refusing probate to the earlier will.

*By the Court.*—Orders reversed, and cause remanded with directions for further proceedings in accordance with this opinion.