Will of Hickey: Hickey (William), Appellant, vs. Hickey (John) and others, Respondents.

*April 14—May 11, 1948.*

543

544

For the appellant there were briefs by *Kaftan, Rahr & Kaftan* and *Fred Will,* all of Green Bay, and oral argument by *J. Robert Kaftan.*

For the respondents there was a brief by *Martin, Clifford, Dilweg, Warne & Duffy* of Green Bay, and oral argument by *G. F. Clifford.*

FAIRCHILD, J. The elements necessary to establish undue influence in the execution of a will are susceptibility of the testator to influence, the disposition and opportunity to exercise influence, and a result indicating the exercise of undue influence by the person so disposed and so situated. *Ball v. Boston* (1913), 153 Wis. 27, 141 N W. 8; *Will of Nachtsheim* (1918), 166 Wis. 556, 164 N. W. 997; *Will of Link* (1930), 202 Wis. 1, 231 N. W. 177; *Will of Schaefer* (1932), 207 Wis. 404, 241 N. W. 382; *Will of Leisch* (1936), 221 Wis. 641, 267 N. W. 268; *Will of Stanley* (1937), 226 Wis. 354, 276 N. W. 353; *Will of Raasch* (1939), 230 Wis. 548, 284 N. W. 571.

The trial court concluded that all essential elements were present in this case. The evidence supports that conclusion. It does positively appear that Martha was an individual susceptible to undue influence. Her physical condition and her lack of interests made her almost completely dependent on those who cared for her. Members of the family recognized that she was particularly susceptible to influence. They made an effort to bring about the forming of a contract that would prevent any member of the family from exercising such influence for selfish benefit. The proposed contract would have permitted Martha's property to descend in accordance with the provisions of the statute for intestacy. This arrangement, thought advisable by all the other members of the family, was prevented by William, who was at that time caring for Martha. The memorandum opinion of the trial court recites, "My conclusion is that any one close to Martha, if aggressive could have unduly influenced her to do as the aggressor's will dictated."

It clearly appears from the facts that the disposition existed in appellant and his wife to use undue influence in securing a will in their favor. They developed in Martha, by more or less artful methods, a conviction that they were her protectors and friends. This new attitude of interest in Martha came

after years of indifference during which a considerable burden was borne by other members of the family who were excluded as beneficiaries. While William and his wife cared for Martha, there was developed in her a deep hatred for George and Alice, who, it will be remembered, cared for her for many years. William and Theresa did everything possible to convince Martha that she had been neglected if not abused by George and Alice. There was testimony bearing upon the way George and Alice had cared for Martha and Elizabeth. The court was convinced that no serious neglect had existed and summed up that phase of the case by referring to the years of service rendered by George and Alice this way: ". . . in such period there was never a complaint filed, nor an investigation asked by neighbors, or a welfare agency, of any neglect by Alice. Alice labored apparently willingly and cheerfully, caring for both Elizabeth and Martha. John Hickey, Sr.'s, mute testimony of appointing Alice a joint executrix of his will, expresses his appreciation and his confidence in her services. It negatives any neglect. . . . A physical fact that cannot be ignored in this regard, is the fact that although Martha weighed 180 pounds, and was bedfast for nine years, she never had a bedsore. Surely Martha wasn't neglected." The deliberate efforts made by William and his wife to alienate Martha's affections from the rest of the family do not evince a brotherly, kindly, and benevolent purpose; they evince a disposition to exercise undue influence for personal benefit.

It is equally well established that the opportunity for the appellant to exercise the undue influence existed. He and his wife so managed affairs that the deceased was within their control. They excluded other members of the family from the part of the house occupied by Martha. They barred George and Alice from access to Martha, and told them to stay away.

That the will as executed was the result of the influence exerted by William and his wife is also evident. While it

does not appear that its actual execution was improper, it does appear that the testatrix's free will and independent action had previously been destroyed by the moral coercion of William and his wife, accomplished by segregating her from and prejudicing her against the other members of the family, toward whom she had shown no dislike before William and his wife came to care for her.

All the elements necessary to constitute undue influence appear from the evidence accepted by the trial court as controlling, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.