ESTATE OF BOSTON: WARNER, Appellant, vs. BOSTON and
others, Respondents.

*May 24—July 1, 1948.*

10

For the appellant there was a brief by *Atwell & Atwell* of Stevens Point, and oral argument by *W. E. Atwell.*

For the respondents there were briefs by *Jenkins & Nason* of Stevens Point, and *Theo. W. Brazeau* of Wisconsin Rapids, and oral argument by *Mr. Brazeau.*

FAIRCHILD, J. Appellant contends that the trial court's findings of fact are not warranted by the recitals in the court's opinion and are not supported by the preponderance of the evidence. In his decision the trial court, in making observations as to the mental condition of the eighty-four-year-old testator, did say among other things, "That is his mental faculties were not unimpaired." But the judge also said, "There is no clear and convincing proof that he did not have sufficient active memory to comprehend the changes and alterations and to understand their scope and bearing." It appears that the opinion of the learned county judge in connection with the record shows a careful study of all matters properly to be considered, including the events leading up to formation of the judgment which was expressed by the testator in his last will.

Examination of the record, giving due consideration to those facts referred to in the trial court's opinion which might lend support to an opposite conclusion, satisfies us that the

result reached below is proper. The evidence certainly sustains the findings that Harry Boston was neither mentally incompetent to make a will nor the subject of undue influence.

Although some of the evidence does show the effect of age upon testator's mental faculties, the evidence as a whole, as ruled by the court, does not show that he was incapable of understanding what he was doing at the time he executed the October 3d will. There is testimony that he was a poor driver of his automobile. He was forgetful, often repeating himself. He was frequently confused about facts relating to his family and neighbors. He sometimes did not recognize old acquaintances. However, testator took an active interest in the affairs of his furniture and undertaking business until he was confined to the hospital some weeks after the will was drawn.

Appellant urges that the testator would not have made the disposition of his property he did in his October 3d will if he were mentally competent. There is evidence that for a time he did not want his son Willis to have an interest in the store; that the relationship between the testator and his daughter Thada had always been a friendly one; that the testator visited at his daughter's home almost every day, and he often consulted her in business matters. She knew of the contents of the former wills. The disposition provided for in the will in the light of these circumstances is claimed to be unnatural and the result of an allegedly irrational reaction of the testator to certain incidents which occurred prior to the execution of the will.

The explanation of the changes made in the October 3d will is to be found in what transpired between appellant, her husband, and the testator. The Warners had been renting a house owned by the testator. In June, 1945, testator agreed to sell them the house, but when the Warners were ready to complete the transaction, the testator had changed his mind, evidently at the suggestion of his wife that the place had been purchased as an investment. This incident did not change

the cordial relationship between the Warners and the Bostons, however. In the summer of 1946 the Warners bought another house. While it was being remodeled they continued to rent and occupy the Boston house. The Warners' testimony reveals that without speaking to them about it, testator approached a Mr. Crocker, who was working on the remodeling of the Warner house, and asked him to fix the roof on the house in which the Bostons were living. When Mr. Crocker explained that he could not leave the job he was on, the testator told him to tell the Warners that if he did not come to fix the roof immediately, it would cost the Warners more than their whole house. Mr. and Mrs. Warner learned of this incident from Mr. Crocker and other friends. This was the first the Warners knew of any ill feeling toward them by the testator. Mr. Boston never spoke to them about it. There is testimony that after the incident, which occurred in September, 1946, testator seemed upset and remarked to an employee that his daughter would be sorry for what she had done.

On September 28, 1946, testator visited his attorney, who lived near by, and requested that certain changes be made in his will. He brought with him a copy of his former will on which, in Mrs. Boston's writing, "Willis" had been substituted for "Thada" as trustee and executor.

Two days later Mr. Warner went to the Boston home to return the keys to the house they had been renting. Angered by the reports he had heard of the testator's expressions of ill feeling toward his family, Mr. Warner directed words to the testator's wife to the effect that he did not want any of the Bostons' money. The next day testator again called on his attorney, told him about Mr. Warner's visit and directed the attorney to make further changes in the will. Testator conferred with his attorney for about an hour and a half that day, October 1, 1946, going over in detail the numerous changes he wanted to make. The attorney's testimony is that the testator's mind was entirely clear; that he acted as though he were

sorry about something but spoke very quietly; that the testator gave definite directions as to just how he wanted the will changed; that he mentioned his property and children and said he wanted to leave Thada out entirely. The attorney asked the testator to seriously reconsider his decision as to some of the changes he wanted to make and to consider certain other alternatives, such as substituting Thada's children as beneficiaries in her stead. The testator replied in effect that that would leave things about the same. The testator was alone with the attorney during this conference.

Two days later, on October 3, 1946, the attorney by appointment came to testator's home with his secretary. The testator took them into a room where the three of them were alone. There the will was read and executed. The attorney and the secretary witnessed the will. The secretary testified that the testator understood each paragraph and mentioned certain property specifically; that he seemed worried but otherwise was the same as she had always known him to be; that he asked especially about the provision regarding Thada; and that he said he could not understand Mr. Warner.

The general rule, often expressed by this court, is that the test of mental competency is whether testator had sufficient active memory to comprehend, without prompting, the condition of his property, his relations to those who might be his beneficiaries, and to hold these things in mind long enough to perceive their relations to each other and to be able to form some rational judgment in relation to them. *Will of Delmady* (1947), 251 Wis. 98, 28 N. W. (2d) 301; *Will of Washburn* (1946), 248 Wis. 467, 22 N. W. (2d) 512; *Will of Mc-Leish* (1932), 209 Wis. 417, 245 N. W. 197. The facts established show clearly that Harry Boston had such competency.

Testator's elimination of Thada from among the beneficiaries of his will cannot be said to be the result of an insane delusion. While the circumstances which apparently prompted his change of attitude toward Thada are trivial, they serve to

'14

explain his change of mind in that regard. Whether or not he was fair or right in his estimate of the worthiness of the Warners to be beneficiaries after the September transactions, the essential fact is clear that when he dictated and later executed his last will his attitude was not so without reason as to amount to a delusion or obsession. Having the capacity, he had the right to dispose of his property as he pleased.

The claim that the will was the result of undue influence remains to be considered. The wife of the testator was admittedly hostile toward Mrs. Warner. While it is probable that her opinions were matters considered by her husband, it is clear from the facts recited that the testator's independent action and judgment were not destroyed. Whatever influence there might have been, it did not destroy the freedom of his will. The evidence accepted by the trial court as controlling does not permit a ruling that the October 3d will was the product of others and was not the testator's decision. It was his own desire that the property should go as he directed.

In view of the result reached, it is unnecessary to give special consideration to the motion to review the ruling which allowed the inclusion in the record of the petition for family allowance.

*By the Court.*—Judgment affirmed.

MARTIN, J., took no part.