WILL OF KLAGSTAD: BRANDON, Appellant, vs. HAGEN, Respondent.

*May 7—June 2, 1953.*

For the appellant there were briefs by *Sanborn, Lamoreux & Pray* of Ashland, and oral argument by *Allan T. Pray.*

For the respondent there was a brief and oral argument by *G. Arthur Johnson* of Ashland.

FAIRCHILD, J. The testimony concerning the competency of the testator to make a will at the time of its execution shows that he had sufficient active memory to comprehend, without prompting, the situation and relation of his relatives, also the condition and extent of his property. The testimony sustained the finding of the trial court. The evidence establishing that the testator had the mental capacity to make a will, the ruling below, is in accordance with the general rule recognizing that the test of mental competency is whether the testator had sufficient active memory to comprehend, without prompting, the condition of his property, his relations to those who might be beneficiaries, and to hold these things in mind long enough to perceive their relations to each other and to be able to form some rational judgment in relation to them. *Estate of Boston,* 253 Wis. 8, 33 N. W. (2d) 257; *Estate of Kesich,* 244 Wis. 374, 12 N. W. (2d) 688. In the last case cited, it was declared (p. 383) : " 'It is elementary that the question of competency is to be determined as of the time of the execution of the will.' "

The testator had been engaged in various occupations. During his life he had been a logging foreman, and for many years was engaged in operating his farm. There is evidence to the effect that at times he evidenced mental and physical deterioration, that some of his habits had changed, and that there were indications of his "slipping." And then again "sometimes his mind was clear and at other times he would fade out and he was getting worse as he went along." But it was established that these spells passed off and then he was rational. The testimony showed that except when he

seemed to "fade out" he was in full control of his mental faculties and that his mind was lucid and clear. It appears that at the time of the making of the will his mind was definitely clear, that he was competent to transact business and handle his affairs.

The will was drawn by Mr. Norlin, an attorney. Mr. Norlin testified, in substance, that he was consulted in the summer or fall of 1950 by the testator, who at the time rationally discussed the effect of the will and the distribution of his estate if he died intestate, that he made inquiries regarding the matter. He then seemed undecided as to whether or not he would make a will. In January, 1951, he called at Mr. Norlin's office, and it was at that time the will was drawn. The attorney's testimony is that the testator then demonstrated, by act and conversation, very definitely that he met all the requirements of testamentary capacity. He discussed with the attorney his affairs, spoke of his farm in Grand View and of his bank account and of some other property, that he gave a complete and correct statement of his property. The testator then related to the attorney his heirs, naming them,—a half sister, Mrs. Brandon of Moses Lake in the state of Washington, his nephews in Norway, and one nephew, "a mental case" in a Wisconsin institution. This recital of his relationship to the people described is shown to be in accordance with the facts existing at that time. He gave instructions to the attorney as to the manner of disposision of his property, talked about the situation of his incompetent nephew, Gus Klagstad, the inmate in a state institution.

According to the testimony of Mr. Norlin, an attorney of considerable experience and good professional standing, the testator understood what the effect of leaving a part of his estate to the incompetent would be, for he discussed that phase of the matter with the attorney. He also discussed with his attorney the matter of devising the farm to his half

sister and bequeathing the balance of his estate to his nephews. This statement of the testator at the time indicated a clear understanding of the persons he wished to have participate in his bounty and also showed sound judgment concerning his business affairs as well as the intended disposition of his estate.

In the will is a provision leaving a portion of his estate to "my nieces and nephews living in Norway at the time of my death." Nieces are a nonexistent class, he having only nephews living at the time. However, the attorney's testimony is that through his (the attorney's) error the word "nieces" was included in the third paragraph of the will, which the testator intended to read: "All the rest, residue, and remainder of my property I give, devise, and bequeath to my nephews living in Norway at the time of my death, share and share alike." In a preceding paragraph of the will he had devised to the objector, "my half sister of Moses Lake, Washington, my farm," describing the same, "to her and her heirs and assigns forever." See 1 Schouler, Wills (6th ed.), p. 316, sec. 260.

The learned trial judge, in his memorandum opinion, said:

"Although there has been no adjudication as to heirship, the testimony of Anna Caroline Brandon, a half sister, is that the decedent left surviving him no nieces in Norway or elsewhere, but that he was survived by three nephews living in Norway and one in Wisconsin. Assuming that this is correct, the inclusion of the word 'nieces' in item Third of the will (if it did get in there by mistake or accident) may very well be considered as surplusage caused by harmless inadvertence. Mrs. Brandon did testify that there were grand-nieces of the decedent living in Norway at the time of his death, i. e., daughters of his nephews. However, a bequest to 'nieces' primarily means daughters of a brother or sister. 69 C. J. 203.

"Since the court has no jurisdiction to rectify the alleged mistake, if a mistake did occur, it is concluded that the will must stand as written and be probated as allowed."

It is considered that the ruling of the court below must be affirmed. It admits the will to probate.

*By the Court.*—Judgment affirmed.