ESTATE OF GAUDYNSKI: MUELLER and others, Appellants, v. GAUDYNSKI and others, Respondents.*

*No. 94.   Argued March 3, 1970.—Decided March 31, 1970.*
(Also reported in 175 N. W. 2d 272.)

[6] *York v. State* (1970), 45 Wis. 2d 550, 173 N. W. 2d 693. *Embry v. State*, ante, p. 151, 174 N. W. 2d 521.

* Motion for rehearing denied, with costs, on June 2, 1970.

For the appellants there was a brief and oral argument by *Bernard F. Mathiowetz* of Milwaukee.

For the respondent Lucille Gaudynski there was a brief and oral argument by *Alfred Rozran* of Milwaukee.

For the respondent James R. Wartinbee, Sr., executor, there was a brief by *Charne, Glassner, Tehan, Clancy & Taitelman,* and oral argument by *Albert Solochek,* all of Milwaukee.

For the respondent guardian *ad litem* there was a brief and oral argument by *Earl M. Wanecek* of Milwaukee.

HALLOWS, C. J.  This case presents no new questions of law but only the application of well-established law governing testamentary capacity and undue influence to the facts.

*Testamentary Capacity.*

The test for testamentary capacity in this state was originally taken from *Delafield v. Parish* (1862), 25

N. Y. 9. *See Holden v. Meadows* (1872), 31 Wis. 284. The rule has been stated in essentially the same form in many cases but generally as stated in *Will of Wicker* (1961), 15 Wis. 2d 86, 88, 112 N. W. 2d 137:

"The test is not whether the testator did the best or the wisest or the theoretically just thing in his will; but, Did he have sufficient active memory to collect in his mind and comprehend, without prompting, the condition of his property, his relations to his children and other persons who might properly be his beneficiaries, and the scope and bearing of his will, and to hold these things in his mind a sufficient length of time to perceive their obvious relations to each other, and be able to form some rational judgment in relation to them?" *Will of Butler* (1901), 110 Wis. 70, 78, 85 N. W. 678; *Will of Washburn* (1946), 248 Wis. 467, 474, 22 N. W. 2d 512; *Will of Delmady* (1947), 251 Wis. 98, 28 N. W. 2d 301; *Will of McLeish* (1932), 209 Wis. 417, 245 N. W. 197; *Will of Klagstad* (1953), 264 Wis. 269, 58 N. W. 2d 636; *Estate of Cyborowski* (1955), 271 Wis. 126, 72 N. W. 2d 713; *Will of Ganchoff* (1961), 12 Wis. 2d 503, 107 N. W. 2d 474.

A testator may not have the testamentary capacity to make a complicated will and yet have the necessary capacity to make a simple will. The test is whether he had the mental ability to make the specific will in question.

The appellants argue the financial affairs of the deceased were complex and involved and the will indicates it is not the product of a rational judgment. Viewing the problem from the standpoint of a layman, to have testamentary capacity he must understand his will and its scope and what it purports to do, but it is not necessary that he understand all the legal terms or even the language of the will. As long ago as 1885 this court held in *Will of Walter* (1885), 64 Wis. 487, 25 N. W. 538, that a will was valid if drawn in accordance with the instructions of a person of sound mind, who had a full and accurate knowledge of the contents of the will although it was written in the English language which the testator

did not understand. *Will of Klagstad* (1953), 264 Wis. 269, 58 N. W. 2d 636; Thompson, *Wills* (3d ed.), p. 106, sec. 59.

The important point is that if the instrument expresses what the testator has in mind and the testator so understands his will, that is a sufficient relationship between the written word and the mental state. While this relationship does not prove testamentary capacity, it does make the content of the will an element to be considered in determining whether the testator was capable of making a rational judgment. In making his will a testator may rely upon his attorney to carry out his instructions and to use legal language which the attorney believes will effectuate the testator's purposes. 57 Am. Jur., *Wills*, p. 83, sec. 66. If the testator is accurately informed of the contents of the will prepared in accordance with his instructions before he signs it and he acknowledges the will represents his thinking, that is sufficient. The lawyer may make a mistake in his knowledge of the law or the effect of language used in drafting the will, which is relied upon by the testator, but such a mistake does not vitiate testamentary capacity. Testamentary capacity deals with the mental capacity and ability and should not be confused with the accuracy of the will which represents performance.

Here, the appellants argue the lack of testamentary capacity was established by five factors: (1) The testator's reaction to a lease which his son drafted and counselled him to execute, (2) the failure of the will to include a marital deduction provision, (3) the disregard of the effect of transferring assets to trusts beyond the reach of the executor for payment of probable estate taxes on the transfers, (4) the failure to dispose of part of the corpus of his estate remaining after a life income estate for his widow terminated, and (5) the simultaneous and inconsistent conveyance of the same real estate to an *inter vivos* trust and in his will.

It is axiomatic in this court that a trial court's finding of fact will be sustained unless contrary to the great weight and clear preponderance of the evidence. A testator is presumed to be sane and to have the capacity to make a will. *Will of Szperka* (1948), 254 Wis. 153, 35 N. W. 2d 911, 35 N. W. 2d 209. The appellants have the burden of proof to show the testator's lack of testamentary capacity. *Estate of Scherrer* (1943), 242 Wis. 211, 7 N. W. 2d 848.

Tax consequences are only one consideration in making the will. Many times such consequences are disregarded so that certain persons or institutions may become beneficiaries. The failure to will your property in a way to obtain the greatest tax benefit is not necessarily evidence of lack of testamentary capacity. It is true the testator reacted violently to an important lease prepared by his son which resulted in loss of faith in and antagonism toward the son, but from the record we cannot tell whether the testator was unjustified in his changed attitude. In any event a testator's dissatisfaction with the conduct of a child which causes him to disinherit the child does not necessarily show lack of testamentary capacity even if the testator may be mistaken in his beliefs.

It is apparent that it was Mr. Gaudynski's intention to convey vacant land to the trustee of a trust created February 25, 1966, for his grandchildren and to deal with his homestead in his will. However, both he and his attorney thought the legal description in the deed covered only vacant land when in fact it also included the homestead. This mistake is explained by the fact that the survey used showed no building on the property. While this mistake created a conflict between the deed and the will, both of which were executed on the same day, we do not think this mistaken reliance on a survey shows that Mr. Gaudynski lacked testamentary capacity even though he was a successful real estate broker of many years experience and might have further checked the legal descriptions and survey.

The appellants claim the will results in an intestacy and this does not show a rational judgment. If it is true an intestacy results, that fact is not very relevant unless it is shown the testator so intended. Perhaps the estate plan did not adequately provide for liquidity and did not provide sufficient funds to pay inheritance taxes especially if the dispositions of property made to two *inter vivos* trusts were found by the federal tax authorities to be made in contemplation of death. However, we do not think this possible result shows a lack of testamentary capacity but rather a lack of good estate planning. While these five elements have some probative value, they are not very convincing in light of the evidence of the respondents.

The unrebutted testimony of witnesses characterized the testator as being alert and mentally sound with a mind unimpaired by age. The witnesses to the will were definite in their opinions of his mental soundness at the time he executed this will. In all, three doctors, two lawyers, and six other witnesses testified and their testimony spanned a period of seven years prior to death. Great weight must be given the testimony of an attorney who was an attesting witness to the will and had the opportunity to observe and talk to the testator. Here, such an attorney drafted the will and had conferences with the testator concerning his affairs for over a year. *Estate of Phillips* (1961), 15 Wis. 2d 226, 112 N. W. 2d 591; *Estate of Stronks* (1961), 14 Wis. 2d 356, 111 N. W. 2d 71; *Estate of Knutson* (1957), 275 Wis. 380, 82 N. W. 2d 196. In view of the record, the trial court's finding that Mr. Gaudynski had testamentary capacity must be affirmed.

### Undue Influence.

The appellants charge the respondents with undue influence. The test for the establishment of a prima facie case of undue influence is of ancient origin and consists

of four elements. As early as the *Will of Ball* (1913), 153 Wis. 27, 141 N. W. 8, these elements were proclaimed as being then well established and originating in effect in the *Will of Jackman* (1870), 26 Wis. 104. During the years the test has been stated and restated in many forms and in the *Will of Freitag* (1960), 9 Wis. 2d 315, 317, 101 N. W. 2d 108, it was summarized and stated in capsule form as follows:

"Susceptibility, opportunity to influence, disposition to influence, and coveted result. Stated more completely: 1. A person who is susceptible of being unduly influenced by the person charged with exercising undue influence; 2. the opportunity of the person charged to exercise such influence on the susceptible person to procure the improper favor; 3. a disposition on the part of the party charged, to influence unduly such susceptible person for the purpose of procuring an improper favor either for himself or another; 4. a result caused by, or the effect of such undue influence."

This statement has been repeated in *Estate of Perssion* (1963), 20 Wis. 2d 537, 123 N. W. 2d 465, and followed down to the present in *Estate of Brehmer* (1969), 41 Wis. 2d 349, 164 N. W. 2d 318, and *Estate of McGonigal,* ante, p. 205, 174 N. W. 2d 256.

All influence on a person to make certain provisions in a will is not undue. People in everyday life make up their minds because of the influence of others. People only act when motivated. An influence is only undue "when it becomes so strong it overpowers and compels the exercise of the will of the person subjected to it." *Will of Cooper* (1965), 28 Wis. 2d 391, 400, 137 N. W. 2d 93. The test is whether "the free agency of the testator has been destroyed." *Will of Faulks* (1945), 246 Wis. 319, 17 N. W. 2d 423. And it has been said "A disposition to unduly influence a testatrix means something more than a mere desire to obtain a share of an estate. It implies a willingness to do something wrong or unfair." *Estate of Phillips, supra; Estate of Knutson, supra.*

As evidence of undue influence, it is argued by the appellants that because Lucille Gaudynski was married to the testator and James R. Wartinbee, Sr., was his financial advisor, both had the opportunity to influence, that they were of a disposition to influence, and the will reflects such influence to their individual advantage. We need not discuss these elements because the appellants have failed to prove by clear and convincing evidence that the testator was a man who was unquestionably susceptible not to influence but to undue influence. The evidence is quite strong that the testator was not very susceptible even to influence.

The trial court found the testator was "hardly susceptible to the influence of others," and while the testator's wife and Wartinbee had the opportunity to exercise influence by the nature of their relationships to him, there was not a sufficient showing that respondents exerted that type of influence whereby they obtained a mastery over the mind of the testator so as to require him to follow their wishes. The trial court's finding is not contrary to the great weight and clear preponderance of the evidence.

This court is asked to construe the 1967 will if it should affirm its admittance to probate. The appellants claim such a construction was asked for in their cross petition to admit the prior 1958 will to probate. We think the reference in the cross petition was hardly sufficient to inform the court and other parties that a construction of the 1967 will was being sought. The trial court did not construe the will when it admitted it to probate and we decline to do so on this appeal.

*By the Court.*—Order affirmed.