IN MATTER OF ESTATE OF BECKER, Deceased: BECKER, Appellant, v. ZOSCHKE, Respondent.

*No. 75–96. Submitted on briefs February 2, 1977.—Decided March 15, 1977.*
(Also reported in 251 N. W. 2d 431.)

338

For the appellant the cause was submitted on the brief of *Dahms and Brewer* of Oconomowoc.

For the respondent the cause was submitted on the brief of *Fenno & Hughes* of Wauwatosa.

HEFFERNAN, J.   This appeal is from the order of the county court which admitted to probate the will of Minna Becker dated April 19, 1974.  The will was objected to by Robert L. Becker, Minna Becker's grandson and only heir at law, on the grounds that the will was not properly executed, that Minna Becker lacked testamentary capacity to execute the will, and that the will was the result of undue influence exercised by Alfred Zoschke, one of the principal beneficiaries of the will.

Although improper execution of the will was urged in the county court, that point was determined adversely to the objector and has not been reasserted on appeal. In respect to questions appealed, we conclude that the trial judge's finding that Minna Becker had sufficient testamentary capacity to execute the questioned will and the finding that the will was not the result of undue influence are not contrary to the great weight and clear preponderance of the evidence.  Accordingly, we affirm the order admitting the will to probate.

The facts adduced at the hearing show that, on April 19, 1974, Minna Becker executed a will which differed markedly from wills executed in 1969 and 1973. The earlier wills named Minna Becker's daughter-in-law, Lorraine Becker, as the sole residual legatee, while the 1974 will provided that one-half of the residue of the estate be left to Alfred Zoschke outright, and that the other residual half be left to Zoschke as the trustee for Lorraine Becker, with the proviso that Zoschke, as trustee, was to distribute the trust principal and income to Lorraine Becker within five years after Minna Becker's death. In the event that Lorraine Becker predeceased Zoschke, Zoschke was to be the beneficiary of the remainder of the trust. Although Zoschke became the principal residuary beneficiary of the 1974 will, the prior wills bequeathed only $1,000 to him.

Zoschke had known Minna Becker for over forty-five years and was related to her by marriage. Zoschke had also served as the accountant for the business operated by Frank Becker, Minna's husband, until Frank's death in 1966.

In 1967 Minna Becker granted a power of attorney to Zoschke, who thereafter managed her personal business, prepared tax returns, and served as an investment advisor. For these services he was paid $100 a year.

On March 23, 1974, Minna Becker, then eighty-three years of age, was admitted to Mt. Sinai Hospital for a condition diagnosed as vasculitis—a toxic immune reaction producing ulceration of the palate, fever, occasional euphoria, and clouding of the sensorium. She also had an arteriosclerotic heart condition and psoriasis.

Erwin E. Fritz, Minna Becker's attorney, who had prepared the 1969 and 1973 wills and the 1974 will questioned in these proceedings, testified that Zoschke called him and stated that Minna Becker wished to see him at Mt. Sinai Hospital. When Fritz arrived at the hospital

on April 17, 1974, he met Zoschke, who was pushing Minna Becker in a wheelchair. Zoschke took Minna Becker to a private room, where he left her in the company of Attorney Fritz for approximately three-fourths of an hour. Fritz testified that Minna Becker said that she wished to change the property dispositions set forth in her prior will because she felt that her daughter-in-law, Lorraine Becker, was overly influenced in the use of her money by her son, Robert Becker. She told Fritz that Zoschke was a long-time friend of the family and "was the only man and member of the family of the Minna Becker family who was trustworthy, who was honest and who was not looking after things for his own situation and personal gains."

Attorney Fritz testified that he returned to the hospital on April 19 with the draft of the will. He stated that he explained the will to Minna Becker, that she then read it herself, and that she then said, "That's the way I want it. That's exactly the way I want it." Fritz stated that he explained the will to her paragraph by paragraph. Fritz testified that, although he had seen Minna Becker more alert on prior occasions when she was not in the hospital, on the date of the will's execution on April 19, 1974, she was "alert" and "cognizant" and recognized, and called by name without prompting, Attorney Fritz's secretary, whom Minna Becker had not seen for several years. Fritz stated that he had not the slightest doubt that Minna Becker had the capacity to execute a will and was knowledgeable in respect to her property and the natural objects of her bounty.

On the other hand, the notes of a nurse's aide showed that on April 19 Minna Becker ate poorly and was incontinent. Doctor Jay S. Goodman, Minna Becker's physician at Mt. Sinai Hospital, testified in respect to the ailments for which she was hospitalized. He stated that she was short of breath, weak, and frequently fever-

ish. He stated that her "sensorium," which he defined as her sense perception, was clouded most of the time. He stated, however, that her periods of euphoria and lack of inhibition coincided with times that she had a high fever. Her temperature on the date the will was executed was roughly normal—99 degrees. Dr. Goodman testified that, in his opinion, Minna Becker would have difficulty in completely comprehending the April 19, 1974, will.

Donald J. Wachowiak, who had been Minna Becker's landlord for several years, visited her on either April 19 or on April 20. She told Wachowiak that she had made a new will and was pleased with the disposition made by the will.

Accordingly, the testimony which confronted the trial judge was that of the physician, who believed, in light of Minna Becker's general condition, that she would not have sufficient comprehension to understand the will (although he did not testify as to her mental attitude on the date the will was executed), and the very specific testimony of Attorney Fritz, who discussed the will with Minna Becker in detail and concluded that she fully understood it, understood the nature of her property, and was fully aware of her relationship with persons who were the potential objects of her bounty. He was unequivocal in his opinion that she was of sound mind and disposing memory at the time of the will's execution.

In determining that Minna Becker had sufficient testamentary capacity, the trial judge relied on the very specific testimony of Attorney Fritz that he found the testatrix to be alert and cognizant, that she had made up her own mind in respect to the changes she wished to have made in her will, and that she gave specific reasons for those changes. The judge also was impressed by Attorney Fritz's testimony that Minna Becker recalled, and called by name, Fritz's secretary whom she had not seen for several years.

The judge also considered the testimony of Doctor Goodman and gave weight to it. But he was also much impressed with the testimony of Minna Becker's landlord, Wachowiak—that the testatrix was knowledgeable about her surroundings and of her relatives, and particularly of the fact that, shortly after the execution of the will, Minna Becker told Wachowiak that she had made a will and that she was happy with it. She also told Wachowiak that Alfred Zoschke at her request had made the arrangements for the consultation with Attorney Fritz.

The trial judge, in concluding that Minna Becker had the testamentary capacity to make a will, relied upon the legal standards formulated by this court in *Will of Wicker,* 15 Wis.2d 86, 112 N.W.2d 137 (1961) ; *Estate of Gaudynski,* 46 Wis.2d 393, 175 N.W.2d 272 (1970) ; *Estate of O'Loughlin,* 50 Wis.2d 143, 183 N.W.2d 133 (1971). In the latter case, this court stated:

"The testator must have mental capacity to comprehend the nature, the extent, and the state of affairs of his property. The central idea is that the testator must have a general, meaningful understanding of the nature, state, and the scope of his property but does not need to have in his mind a detailed itemization of every asset; nor does he need to know the exact value of his property. A perfect memory is not an element of a testamentary capacity. 1 Page, *Wills* (Bowe-Parker), p. 617, sec. 12.12. The testator must know and understand his relationship to persons who are or might naturally or reasonably be expected to become the objects of his bounty from which he must be able to make a rational selection of his beneficiaries. He must understand the scope and general effect of the provisions of his will in relation to his legatees and devisees. Finally, the testator must be able to contemplate these elements together for a sufficient length of time, without prompting, to form a rational judgment in relation to them, the result of which is expressed in the will." (at 146–47)

Where a trial judge has made a finding in respect to testamentary capacity and has applied the proper legal standards, this court will not upset that finding unless it is contrary to the great weight and clear preponderance of the evidence. *Gaudynski, supra.* Although conflicting evidence may be presented, it is the trial judge, as the finder of fact, who makes the final determination of testamentary capacity, which will not be set aside unless the record demonstrates that the finding is contrary to the great weight and clear preponderance of the evidence.

In the instant case, although the testimony of the physician was significant, it was a generalized opinion in respect to what he believed to be the testatrix' probable mental capacity. He did not attempt—nor could he—base his opinion on Minna Becker's condition or mental capacity at the very time the will was executed. He was not there. The testimony of Attorney Fritz, on the other hand, was focused on the very time when it was necessary that the testatrix demonstrate the capacity to execute the will.

Moreover, the general mental condition of one who executes a will is only peripherally relevant, for a person may have a general or usual condition of inability to comprehend and yet have lucid intervals, during which time there is demonstrated testamentary capacity and a will may be appropriately executed. *Estate of Dobrecevich,* 14 Wis.2d 82, 109 N.W.2d 477 (1961); *Estate of Kaiman,* 13 Wis.2d 201, 108 N.W.2d 379 (1961).

The objector argues on this appeal that, where the testimony of an attesting witness, in this case Attorney Fritz, conflicts with that of a physician, the will should be denied admission to probate if the physician is of the

opinion that the testatrix lacks testamentary capacity. For that proposition, the objector relies on the *Will of Strahlendorf*, 272 Wis. 435, 76 N.W.2d 334 (1956). That case, however, does not stand for the broad proposition urged by the objector—that in all cases the testimony of a physician in respect to competency is to be preferred over that of an attesting witness who is an attorney. This is made eminently clear in *Strahlendorf* itself. Therein this court stated:

"Since there was a conflict in the evidence as to decedent's competency on March 28, 1953, the question was for the trial court. Its conclusion that Adolph Strahlendorf was not competent on that date is based largely on the medical testimony." (at 439–40)

*Strahlendorf* stands for the proposition that, where a probate judge makes a finding of competency, that finding will not be reversed unless it is contrary to the great weight and clear preponderance of the evidence. In *Strahlendorf* the evidence upon which the trial judge relied met that test. That it was the physician's testimony that was controlling in *Strahlendorf* depended upon the credibility of the witness and the weight of the evidence in that case. The same test is met in the instant case where the trial judge chose to rely upon the testimony of Attorney Fritz rather than that of the physician. The question is not whether a finding not made by the trial court would be affirmed on appeal, but whether the finding in fact made should be affirmed as not being contrary to the great weight and clear preponderance of the evidence. It is apparent that the trial judge's finding in this respect must be affirmed.

Additionally, the objector to the will of Minna Becker argues that the trial judge incorrectly found that the will was not the result of the undue influence of the principal

beneficiary, Alfred Zoschke. The burden of proof and the responsibility of the appellate court in the review of a finding in respect to alleged undue influence is set forth in *Estate of Hamm*, 67 Wis.2d 279, 227 N.W.2d 34 (1975):

"The law governing the proof of undue influence and the scope of appellate review is well established. Undue influence must be proved by clear, satisfactory and convincing evidence and a finding by the trial court on the issue will not be upset on appeal unless it is against the great weight and clear preponderance of the evidence. . . .

"Therefore, on appeal we examine the record, not for facts to support a finding the trial court did not make or could have made, but for facts to support the finding the trial court did make." (at 282)

In order to void a will because of undue influence, four elements must be proved by the objector by clear, satisfactory, and convincing evidence. These elements were capsulized in *Will of Freitag*, 9 Wis.2d 315, 317, 101 N.W.2d 108 (1960):

"Susceptibility, opportunity to influence, disposition to influence, and coveted result. Stated more completely: 1. a person who is susceptible of being unduly influenced by the person charged with exercising undue influence; 2. the opportunity of the person charged to exercise such influence on the susceptible person to procure the improper favor; 3. a disposition on the part of the party charged, to influence unduly such susceptible person for the purpose of procuring an improper favor either for himself or another; 4. a result caused by, or the effect of such undue influence."

The same case qualifies the rule by pointing out that proof of undue influence generally rests in circumstantial evidence and that, when three of the four elements are established by the required proof, only slight evidence in

respect to the fourth element is necessary. *Freitag,* at 318.

The trial judge found that Alfred Zoschke, as a trusted advisor and as one who saw her at least daily, had the opportunity to exercise an influence upon Minna Becker in respect to her will. He also concluded that, since Alfred Zoschke, as a result of the new will, became a legatee of half of the residue and the beneficiary of the remainder of the trust established for Lorraine Becker, the burden of proof in respect to coveted result was met.

The court found, however, on the basis of testimony, that Minna Becker was a strong-willed individual and that the objector had not proven by clear and convincing evidence that Minna Becker was susceptible to influence. In addition, he concluded that there was no evidence which showed any disposition on the part of Alfred Zoschke to influence Minna Becker in the disposition of her estate.

There was an abundance of testimony to sustain the trial court's conclusion that Zoschke had the opportunity to influence Minna Becker. There was evidence that Zoschke visited her as often as twice a day during her confinement at Mt. Sinai Hospital and subsequently at the River Hills Nursing Home. Repeated close contact with the testator has been found by this court to justify a finding of the opportunity to influence. *In re Estate of Christen,* 72 Wis.2d 8, 239 N.W.2d 528 (1976) ; *Estate of Hamm, supra.*

The trial judge, as a result of the will's provision for a larger bequest to Alfred Zoschke—and from that fact alone—was satisfied that the element of "coveted result" was sufficiently proved. We are of the opinion, however, that, merely because a provision of the will benefits the alleged influencer, that does not *ipso facto* prove the coveted-result element.

The concept of coveted result is explained in *Will of Cooper*, 28 Wis.2d 391, 399, 137 N.W.2d 93 (1965). Therein this court said:

"A will must not only on its face make an unnatural disposition, but the disposition must also be in fact unnatural to satisfy the test. The concept of coveted result includes obtaining for oneself or another a benefit such person would normally not receive and its reception is unjust to someone else. Evidence may make what appears to be an unnatural or unjust will a natural and plausible one."

In the instant case there was much to show that the larger bequest to Alfred Zoschke was not unnatural. He, like the other residuary legatee, Lorraine Becker, was a relative by marriage. Moreover, the evidence was undisputed that he had been a friend and acquaintance of Minna Becker for forty-five years and had been a trusted financial advisor. In addition, Minna Becker specifically stated to third parties, including her lawyer, that:

"Mr. Zoschke was the only man and member of the family . . . who was trustworthy, who was honest and who was not looking after things for his own situation and personal gains."

While the facts of record do not reveal the comparative rectitude of Zoschke, vis-a-vis that of other members of the Minna Becker family, the facts do reveal a family relationship and a long period of trusted friendship. It would be impossible to say as a matter of law that a bequest, even of the whole estate, under these circumstances would be unnatural. We conclude, therefore, that the trial judge erred as a matter of law when he interpreted the coveted-result test to merely embrace the concept that the will as drawn was beneficial to the person who allegedly exercised undue influence. We conclude, however—although we cannot sustain that finding, since

it was apparently made on the basis of erroneous or an unduly abbreviated view of the law in that respect—that the error had no affect on the ultimate conclusion that no undue influence was exercised.

The court correctly found a complete lack of evidence of Zoschke's disposition to influence Minna Becker. This court has repeatedly stated that a disposition to influence means more than a mere desire to obtain a share of the estate—that there must be evidence that implies a willingness to do something wrong or unfair to obtain a share of the estate. There must be evidence of grasping and overreaching. *Estate of Hamm, supra; Estate of Brehmer,* 41 Wis.2d 349, 164 N.W.2d 318 (1969). There must be evidence of conduct which is designed to take an unfair advantage. *See, Estate of McGonigal,* 46 Wis.2d 205, 174 N.W.2d 256 (1970).

Minna Becker depended upon Zoschke and had done so for a long period of time, but the court's finding that there was no evidence that he attempted to take an unfair advantage or that he demonstrated a willingness to do anything wrong or unfair to secure a greater share of the estate for himself at the expense of other relatives is not only not against the great weight and clear preponderance of the evidence, but is the only possible finding that the court could have made in respect to the evidence before it.

We accordingly hold that the conclusion of the trial court that Minna Becker's will was not the result of undue influence is not contrary to the great weight and clear preponderance of the evidence. It is clearly correct.

For the first time on this appeal the objector argues that, although undue influence not be proved by the four-factor test, it may be proved under the test restated in *Will of Cooper, supra,* at 401. Under that test, undue influence may be found where one who benefits from a

will is in a confidential and financial relationship with the testator and that relationship is coupled with suspicious circumstances. Because this argument was not raised in the trial court and the objector relied only on the four-factor test, we are not obliged to consider this argument, now made for the first time. We conclude, however, that this assertion should be disposed of.

It is clear, of course, that there was a confidential relationship between Zoschke and the testatrix, Minna Becker, but the record is devoid of any suspicious circumstances in connection with Zoschke's conduct before or at the time of the drafting and execution of the will. There is evidence to show that Attorney Fritz was called at the request of Minna Becker for the purpose of drafting the will. There is no evidence whatsoever to show that Minna Becker's desire for a redraft of the will was in any way impelled by Zoschke's suggestion or urging. It was the testimony of Wachowiak, Minna Becker's landlord, that she, Minna Becker, had requested Zoschke to call the lawyer. Moreover, Zoschke never discussed the terms of the will with Attorney Fritz, and all directions to Fritz came directly from Minna Becker at a time when Zoschke was not present. Nor was Zoschke present at the time the will was executed.

The facts in this case should be contrasted with those found in the *Estate of Komarr,* 46 Wis.2d 230, 175 N.W.2d 473 (1970), cert. denied 401 U.S. 909. Therein the court found the testatrix susceptible to undue influence, a fact not found in the instant case. Moreover, this court, on appeal, stated:

". . . we think the haste with which the document was drafted, the obviously weakened condition of the testatrix and the failure to contact the testatrix's only son and sole heir of her hospitalization constitute suspicious circumstances, which, when coupled with [the attorney's] fiduciary capacity, create an inference of undue influence." (at 241)

The only analogous fact that appears in the instant case is confidential relationship. Unlike the situation in *Komarr*, here during the entire period of Minna Becker's illness, her other relatives visited and talked to her. The drafting and execution of the will were accomplished over a two-day period and the will was executed only after two extended conversations between testatrix and the scrivener attorney. The circumstances in the instant case are not of such a suspicious nature as to create an inference of undue influence.

The trial judge, however, did not make any determination on the basis of this test, and we accordingly cannot review any findings of fact or conclusions in respect thereto.

It seems apparent, however, from the record as a whole that the facts in the instant case do not even arguably raise the applicability of the test now urged by the objector. It is probably for this reason that the trial judge gave that test no consideration.

We conclude that the trial court's findings that, on the day of the execution of the will, Minna Becker possessed testamentary capacity and was not under the undue influence of Zoschke and are not contrary to the great weight and clear preponderance of the evidence.

*By the Court.*—Order affirmed.