ESTATE OF BORZYCH: BRIESKE, Respondent, vs. BORZYCH and another, Appellants.

*September 10—October 5, 1954.*

527

For the appellants there was a brief and oral argument by *James D. Sammarco* and *Arthur W. Taylor,* both of Milwaukee.

For the respondent there was a brief and oral argument by *John L. Newman* of Milwaukee.

BROADFOOT, J. On September 23, 1953, the proponent was examined adversely under the provisions of sec. 326.12, Stats. When the matter came on for hearing on December 29, 1953, the proponent called the two subscribing witnesses to the will, and rested. The objectors then called the proponent adversely under the provisions of sec. 325.14, but upon objection the court refused to permit her cross-examination as an adverse party. The objectors now contend that this was error. We agree with that contention.

The probate of a will is a judicial proceeding and the interests of the proponent and the objectors were certainly adverse, and the objectors should have been permitted to examine Mrs. Brieske as an adverse party. After the ruling by the court, the objectors called Mrs. Brieske as their own witness and it appears from the record that they were given a great deal of latitude in her examination. The attorney for the proponent made few objections to the questions and they were not unduly limited in her examination. The relevant parts of her examination taken before trial were admitted. After the objectors rested, the proponent was called to the stand to testify in her own behalf. The attorney for the objectors objected to certain questions propounded to her and made the following statements: "Your Honor, this is our witness. Am I correct? Using our witness as rebuttal. I say it is cross-examination." "Your Honor, we object to any questions asked by Mr. Newman of our witness, Mrs. Brieske, as being improper on the point of rebuttal." The

objections were properly overruled. At the close of her testimony in her own behalf the objectors were given an opportunity to cross-examine her but they declined.

From the record it is apparent that the objectors were satisfied with the answers given by Mrs. Brieske and they have called attention to nothing further that they might have inquired about had she been an adverse witness, nor do they call attention to any inconsistency between her original adverse examination and her testimony given upon the trial that could have been used for impeachment purposes. Although the ruling was error, we find that, because of what transpired thereafter, it was not prejudicial.

During the hearing the objectors offered two prior wills executed by the testator. The trial court ruled that they were immaterial and excluded them on that ground. Again we agree with the objectors that this was error. However, the record again discloses that the error was not prejudicial to the objectors. The trial judge read both of the wills and incorporated in the record sufficient comments on the contents of the wills to show that Rosemary Bindel was the residuary legatee in the first of said wills and that she was the sole beneficiary in the last of said prior wills, dated February 11, 1949.

The rules as to the admission of prior wills are well covered in *Estate of Landauer,* 261 Wis. 314, 52 N. W. (2d) 890, 53 N. W. (2d) 627, in *Estate of Smith,* 263 Wis. 441, 57 N. W. (2d) 727, and in the case of *Estate of Brzowsky,* ante, p. 510, 66 N. W. (2d) 145. Under the rules there set forth these prior wills were clearly admissible and were material to the case the objectors were seeking to establish, in that a sudden and complete departure from a prior plan of disposition of the property of a testator is an element to be considered in cases where a will is objected to because of undue influence.

*Will of Stanley,* 226 Wis. 354, 276 N. W. 353; *Will of Bocker,* 167 Wis. 100, 166 N. W. 660.

The objections filed to the admission of the will to probate were the usual ones, that the instrument was not executed in the manner provided by law, that at the time of the execution of the will said Edward Borzych was not of sound mind and had not sufficient mental capacity to make a will, and that the execution thereof was procured by undue influence exercised upon the testator by Helen F. Brieske. The objectors have apparently abandoned the first two grounds upon this appeal. They could well do so because it clearly appears from the record that the will was properly executed and that on the date of the execution thereof the testator had sufficient mental capacity to make a will.

With reference to the question of undue influence the trial court found:

"(a) That during his lifetime, including the time of the execution of the will of August 2, 1949, Edward Borzych was a man of strong will and could not readily be moved or influenced by anyone and was not a person subject to undue influence.

"(b) That an opportunity for the proponent, Helen F. Brieske, to exercise undue influence did exist as she was a tenant of the testator, saw him almost daily and he frequently came to her apartment for meals and other favors.

"(c) That said Helen F. Brieske did not have the disposition to influence Edward Borzych to procure an improper favor and did not in any manner influence Edward Borzych in executing the will dated August 2, 1949; that at such time there was a friendly relationship and a mutual friendship between the testator, Rosemary, and Helen F. Brieske; that the evidence falls short of proving a one-sided conspiracy or a well-laid plan by one of the friends, Helen F. Brieske, to procure an improper favor.

"(d) That by the will, Helen F. Brieske received an inheritance which she had not received before and Rosemary Bindel received no inheritance; that the disinheritance of the contestant, Josephine Borzych was not unnatural, as she has

not been friendly with the testator for at least five years before the execution of the will; that the testator had become disturbed in July, 1949, upon learning that Rosemary contemplated marriage to Albert Bindel of Racine and that the plans which he had made with Rosemary for living together in an apartment, which they were remodeling, would be disrupted by such marriage; that the will in favor of Helen F. Brieske was not unnatural under the circumstances and was not the result of undue influence on the part of anyone."

The objectors claim that these findings are against the great weight and clear preponderance of the evidence. They contend that the following is established by the record:

The testator resided with Rosemary Borzych (now Rosemary Bindel) and her mother. Rosemary's mother died in 1948. The testator continued to reside with Rosemary Borzych, and planned to do so as long as he lived. Following the death of her mother, Rosemary and Mrs. Brieske became close friends. They visited almost daily. Mrs. Brieske had many meals with Rosemary and the testator, and they in turn were frequent visitors at the apartment of Mrs. Brieske. Rosemary and her uncle were the joint owners of a summer home near Racine. During the summer of 1948 and during a portion at least of 1949, Rosemary, Mrs. Brieske, and the testator spent most of their week ends at this summer home. Albert Bindel had a summer home near theirs. Rosemary had known him for some twenty years. Mrs. Brieske encouraged Rosemary to invite him to lunch and to see him whenever she could; that in July, 1949, Mrs. Brieske falsely stated to the testator that Rosemary and Albert Bindel were to be married; that the testator became very angry and had an argument with Rosemary about her marriage; that at that time Rosemary and Albert Bindel were not engaged; that it was because of this false statement and other remarks to the testator by Mrs. Brieske that he became so angry that he suddenly changed his will and named Mrs. Brieske as his sole beneficiary. Testator continued to live with Rosemary

until her marriage to Albert Bindel in December, 1949, and at that time he moved into a room in Mrs. Brieske's apartment; that he had planned to move to a hotel but took the room at Mrs. Brieske's at her insistence; that Mrs. Brieske knew of the will in her favor and that thereafter she was not as cordial to Rosemary; that she did not encourage her to call upon the testator after the marriage and did not notify her of his final illness until just prior to his death.

The objectors contend that the record supports a deduction that Mrs. Brieske conceived a plan that would change the feeling of affection that the testator had for Rosemary. The plan was to advise and urge the niece, who was a schoolteacher more than forty years of age, to get married because the testator was opposed to marriage by his niece, as he wanted to reside with her during the remainder of his life. If the feeling of the testator toward his niece was changed to one of anger Mrs. Brieske might benefit thereby. They contend that the results speak for themselves and that by falsely stating to the testator that Rosemary and Albert Bindel were engaged to be married the testator became so angry that he executed an unnatural will.

There was a conflict in the testimony on the material points. Mrs. Brieske stated that Rosemary told her in July that she was to be married but that she did not say anything to the testator about it. Mrs. Brieske did know that the testator had made a will in favor of Rosemary but she denied any knowledge that he had changed the will to leave all of his property to her.

Most of the testimony as to the testator was to the effect that he was a man of strong will and that he was not susceptible to undue influence. The objectors contend that, because of the close friendship between testator and Mrs. Brieske, his mind was receptive to the false information given by her, and the position of trust and confidence that she enjoyed with the deceased made him susceptible to her influence. In its memo-

randum decision the trial court stated that the testator first received the information with reference to the impending marriage of his niece at the summer home. The only testimony in the record as to a conversation of this kind at the lake is that it was with a man who talked to him there.

The objectors would also have us reverse the finding of the trial court as to the disposition of Mrs. Brieske to exercise undue influence. To do so we would be forced to make an inference from the record, as there is no direct evidence that Mrs. Brieske conceived any plan, that she carried out the plan, or that she had any idea that she would profit as the result of any such plan. To sustain their contention of undue influence, the objectors were required to prove by clear, satisfactory, and convincing evidence at least two of the essentials upon which the court found against them. They did not produce the necessary quantum or character of evidence to support their position.

So far as the objector Josephine Borzych is concerned, the will was not an unnatural one. It appears clearly that she and the testator had not been friendly for some time and no provision was made for her in the prior wills offered in evidence. The record establishes, too, that Rosemary had inherited property of great value and was not dependent upon the testator for her support. It is fundamental that a testator can leave his property to a beneficiary or beneficiaries of his choice.

It is our conclusion, therefore, that the record supports the findings of the trial court on the question of undue influence and that the findings are not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.